# SUFFOLK COUNTY.

## WILLIAM E. DE WITT *vs.* EDMUND PIERSON.

The mere fact that the rooms beneath a tenant are occupied by a woman, also a tenant of the same landlord, of notoriously bad character, who keeps in her apartments lewd women as lodgers, uses the rooms for purposes of prostitution, and receives there the visits of drunken men, does not constitute an eviction, although the noise and riot proceeding from the rooms attract crowds of boys around the spot, and the singing of bawdy songs by, and the loud talking of the women and their visitors, and the frequent ringing of the door bell disturb the tenant and his wife, and although the tenant notifies the landlord of this state of affairs, and he promises to attend to it but does nothing. Neither under such circumstances is the tenant entitled to a diminution of rent.

CONTRACT to recover eleven weeks rent for the use and occupation of a tenement, hired of the plaintiff by the defendant, and by him actually occupied from the second of March, 1870, to May 18th, 1870, at six dollars a week.

At the trial in the Superior Court before *Scudder,* J., there was no denial by the defendant that he occupied the premises

during all the time sued for, nor of the correctness of the plaintiff's account, except as to the charge of rent for the first two weeks of the term, which he claimed had been paid, and which was allowed by the jury in their verdict. For the defence, it was shown that the premises, for the use of which rent was claimed, were two rooms situated in a house on Harrison Avenue, in the city of Boston; that during the entire portion of the term declared for, other rooms in the same house directly beneath those occupied by the defendant were leased by the plaintiff to one Mrs. Fletcher, whom one of the witnesses for the defence, formerly a policeman, testified was a person of notoriously bad character; that this woman introduced into the apartments hired by her two other women as lodgers, whom the same witness testified were notoriously of lewd character. One of the witnesses for the defence thought the apartments let to this person were used for the purpose of prostitution, and he testified that, on two occasions, drunken men were seen in their rooms; that the policeman on duty in that section of the city, on several occasions, drove away a crowd of boys who were attracted to the spot by the noise and riot proceeding from the rooms occupied by these women; and the defendant testified that the disturbance caused by the singing of bawdy songs, and the loud talking of the women and their visitors, and the frequent ringing of the door-bell, were a constant source of annoyance to the family of the defendant, which consisted of himself and his wife; that notice of the fact that the defendant was annoyed and disturbed by these things, and of the character of the house and of these women, was given on three several occasions during the term, to the plaintiff's agent, who promised to attend to it; that the defendant, whenever asked to pay his rent, refused to do so, unless these women were removed from the house; that the plaintiff took no notice of the request of the defendant, except to promise by his agent to get the women out, if it could be proved to him that they were of bad character, which the defendant undertook to do, if the agent would call at the house any evening, and named an evening; but the agent replied he had other business to attend to. No other notice than that above mentioned was given to the plaintiff

of these facts, but the policeman testified he made four attempts to find the plaintiff to inform him of the character of the house, and left word with a brother of the plaintiff that he wished to see the plaintiff in regard to it. The plaintiff testified he never received the message. Notice to quit was served by the plaintiff on the defendant, and the defendant left the premises two or three days before the notice expired, having, as he alleged, used all due diligence from the time he first discovered the character of the other occupants, to procure other suitable lodgings. It was in evidence that the business of the plaintiff in matters pertaining to his real estate was conducted by an agent.

The presiding judge ruled that the above facts, though proved, constituted no defence to the action. The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*J. Willard & C. H. Hurd*, for the defendant.

*C. H. Drew*, for the plaintiff.

ENDICOTT, J. It is well settled in this Commonwealth, that to constitute an eviction there must be either a physical ouster of the tenant by the landlord, or some act done by him on the premises with the intent of depriving the tenant of the enjoyment and occupation of the whole or part of the same to which the tenant yields the possession within a reasonable time, and in either case the rent is suspended. *Royce* v. *Guggenheim*, 10 Mass. 201. There was no physical ouster in this case. The only question is whether the evidence offered shows such acts on the part of the plaintiff and the defendant as will constitute an eviction under the above definition. It does not appear on the evidence that the plaintiff let the rooms, the use of which is complained of, with the intent to disturb the defendant in his use and occupation. On the contrary, the rooms were so occupied when the defendant's term began. Nor does it appear that the plaintiff at that time had any knowledge of the alleged use made of the rooms, nor that any proof of such use was at any time given him. Even if an intent to evict may be presumed, as argued by the defendant, from the neglect of the agent to ascertain the facts, when notice was given him, it does not appear when the notice was given, except that it was on three several occasions

during the term, which was of eleven weeks' duration. The evidence also fails to show that the defendant was in fact deprived of the use and occupation of his demised premises; he continued in actual use and occupation of the whole, during the eleven weeks, and at last yielded to a notice to quit for non-payment of rent. No evidence was offered that would justify the jury in finding that any act was done by the plaintiff with the intent and effect of depriving the defendant of the use and occupation of the whole or part of the demised premises.

The case of *Dyett* v. *Pendleton*, 8 Cow. 727, is relied upon by the defendant. That has been called an extreme case; it has been modified, if not overruled, by later decisions in New York; and this court declined to rest its judgment upon it in *Royce* v. *Guggenheim*. But that case was decided upon a very different state of facts, and contained many elements, necessary to constitute an eviction, which are wanting in the case at bar. The defendant there, under a lease for years, had been in more than a year, when the plaintiff, who occupied adjoining rooms under the same roof, himself created the disturbances and nuisances complained of, and the defendant within a month abandoned his tenement. The intent to evict, and actual abandonment, might well have been found; but to hold there was an eviction here would be to go far beyond that decision.

There having been no eviction from the premises, but the defendant remaining in full occupation, we do not think there was any question for the jury, as to the beneficial value of the premises to the defendant; and it was immaterial whether he had used due diligence in endeavoring to obtain other lodgings. The cases cited by the defendant do not sustain this position. In one, the tenant was excluded from the occupation of a portion of his demised premises; in the other, access to the demised premises was closed, and the occupation thereby limited. *Cowie* v. *Goodwin*, 9 C. & P. 378. *Boston & Worcester Railroad* v. *Ripley*, 13 Allen, 421.

The doctrine of the recoupment of damages, as established in this Commonwealth, does not apply to this case.

*Exceptions overruled.*