RANSOM C. TAYLOR *vs.* MICHAEL J. FINNIGAN.

Worcester.    October 2, 1905. — December 4, 1905.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Landlord and Tenant.    Theatre.*

The lessor of real estate, used by the lessee as a theatre, who has not covenanted to make repairs, does not commit any breach of the covenant of quiet enjoyment by failing to furnish additional means of egress ordered by the inspector of public buildings under R. L. c. 104, §§ 36, 55, for want of which the lessee's license to carry on theatrical performances is suspended.

If a lessor of real estate, used by the lessee as a theatre, agrees to provide additional means of exit if required by the public authorities, a failure to do this, followed by a suspension of the lessee's license to carry on theatrical performances, is no defence to an action for the rent of the premises which the lessee has continued to occupy.

Whether the incorporation of the provisions of St. 1894, c. 382, relating to buildings thereafter to be erected and designed to be used in whole or in part as a theatre, in R. L. c. 104, § 36, without any express limitation as to the time of erection of the buildings, indicates an intention to put all buildings designed for such use, whenever erected, on the same footing in regard to requirements as to exits, *quære.*

CONTRACT on a covenant in a lease in writing, for rent of a portion of the theatre building on Pleasant Street in Worcester for the months of June and July, 1904. Writ dated August 13, 1904.

The lease, a copy of which was annexed to the declaration, contained the following ordinary covenant of the lessee in regard to repairs : " And also will keep all and singular the said premises in such repair as the same are in at the commencement of said term, or may be put in by the said lessor or his representatives during the continuance thereof, reasonable use and wear, and damage by accidental fire or other inevitable accidents only excepted."

The defendant's answer was as follows :

" Now comes the defendant in the above-entitled cause and admits the execution of the lease described in the plaintiff's declaration, and that he entered into the occupancy of the premises described in said lease; that said demised premises were at the time of the execution of said lease solely fitted for use as a theatre and were not adapted for any other purpose and had no value under said lease, except for use as a theatre ; that he has not paid the rent stipulated in said lease for the months of June and July, 1904, but has otherwise fully complied with and performed all the covenants and agreements in said lease contained, on his part to be performed ; that on the 16th day of June, 1904, he was evicted from the premises described in said lease by authority of law, in that one Joseph M. Dyson, inspector of factories and public buildings in the district of Massachusetts, an officer having lawful authority and jurisdiction in the premises, did deliver to the defendant an order of the tenor following, that is to say :

" ' Commonwealth of Massachusetts. District Police. Inspection Department. Worcester, Mass., June 16th, 1904. Mr. M. J. Finnigan, Lessee of Lothrop's Opera House, Worcester. Sir : In compliance with the provisions of the Statutes of the Commonwealth relating to the inspection of factories and public buildings, on the first day of January, 1904, I inspected Lothrop's Opera House, No. 17, Pleasant Street, Worcester, Mass., of which you are the lessee, and you are hereby notified that in accordance with the provisions of chapter 104, section 36, of the Revised Laws, said opera house must be provided with additional means of egress for the use of occupants in case of fire or panic. Such egress to be constructed in accordance with the above section to be separate and dis-

tinct from all other exits. Also that additional egress must be provided for the occupants of stage dressing rooms. Also that said opera house should not be occupied until above changes are made, as in my opinion, said house is unsafe to the lives and limbs of occupants. Joseph M. Dyson, Inspector of Factories and Public Buildings.'

"That a compliance with the order of said Dyson required structural changes in the buildings, a part of which was leased to the defendant by said lease, outside of the portion of said building covered by said lease, and that such changes could be made within the building owned by the plaintiff, and that it was impossible to comply with the terms of said order within the portion of said building demised to the defendant by said lease.

"That immediately after the delivery of said order of said Dyson, to the defendant, he called upon the plaintiff and his duly authorized agent and showed him said order of said Dyson ; and said to said plaintiff, the lessor, that said order constituted a breach of the conditions of said lease on the part of said lessor, and that the defendant could not further occupy said premises and pay rent therefor, unless the lessor should put said premises in the condition required by said order of said Dyson and to the satisfaction of said Dyson, and that thereupon, the plaintiff, the said lessor, orally promised that he would forthwith make the necessary alterations as required by said order of said Dyson ; that thereafter, upon petition of said Dyson to the license board of the city of Worcester, a board having jurisdiction in the premises, the license to carry on theatrical performances in said demised premises was by said license board, on June 18, 1904, suspended, and such license has been suspended until the present time ; that said lessor subsequently did refuse and neglect to comply with the order of said Dyson and to put said demised premises in the condition required by said order, and that thereafter, on or about the 15th day of July, 1904, the defendant delivered to the plaintiff, together with a copy of said order of said Dyson, a letter of the tenor following :

" ' R. C. Taylor, Esq., Worcester, Mass. Dear Sir : You will please take notice that on June 16, 1904, there was served upon me notice that Lothrop's Opera House, No. 17 Pleasant Street, Worcester, Mass., was unsafe for the lives and limbs of its occu-

pants and that it could not be occupied until certain matters described in said notice were attended to ; also, that Mr. Dyson, the inspector, petitioned the license board of the city of Worcester for a revocation of the license to carry on theatrical performances there.  These matters are a breach of your lease to me, dated November 20, 1903, and until you comply with the demand of Mr. Dyson, I decline to pay rent under the lease.  I enclose herewith copy of notice from Mr. Dyson, for your information.  Yours truly, M. J. Finnigan,'
and that said lessor has continually refused to comply with said order of said Dyson and to do anything upon said demised premises.

" Wherefore, and in consequence of all the matters and things hereinbefore set forth, the defendant has been· deprived of the use and enjoyment of the premises, properties and rights described in said lease, whereby the covenants made and entered into in said lease by said plaintiff, the lessor therein, have been broken and violated, and the defendant has suffered great loss and damage, and especially that the covenants therein in said lease contained and implied, as matter of law, that the defendant shall have the quiet use and enjoyment of the premises described in said lease, have been broken by said lessor, the plaintiff, and especially the last covenant in said lease contained, that is to say, —

" ' And the said lessor covenants and agrees with the said lessee and his representatives that he or they paying the rent as aforesaid and performing the covenants herein contained, on his or their part to be paid and performed, shall peaceably hold and enjoy the said rented premises, without hindrance or interruption by the said lessor or any person or persons whomsoever ' ; and that by the matters and things hereinbefore set forth, and by reason of the non-performance by the plaintiff of his said oral agreement, made between the defendant and the plaintiff, that the latter should put the premises in such order as required by said Dyson, the plaintiff has permitted, suffered, and caused the defendant in effect to be evicted from said premises, through no fault of the defendant, all to the great damage of the defendant, and that thereby the defendant was relieved of his covenant to pay rent as aforesaid."

The plaintiff demurred to the answer on the grounds : 1. That the answer sets forth no legal or equitable defence to the plaintiff's declaration. 2. That the facts set forth in the defendant's answer do not constitute an eviction of the defendant from the leased premises as therein alleged. 3. That the agreement of the plaintiff set out in the answer, after the execution of the lease, to make certain alterations in the leased premises and the plaintiff's refusal so to do, if true, constitute no legal or equitable defence to the action for rent.

The Superior Court sustained the demurrer, and ordered judgment for the plaintiff for the amount claimed in the declaration. The defendant appealed.

*A. P. Rugg,* (*H. H. Thayer* with him,) for the defendant.

*G. S. Taft,* (*G. R. Stobbs* with him,) for the plaintiff.

BRALEY, J.   By the terms of the lease there was no implied warranty that the building leased was fitted for occupation as a theatre, or for any particular use, and the lessee was at liberty to occupy the estate for the pursuit of any lawful business. *Dutton* v. *Gerrish,* 9 Cush. 89.   *Stevens* v. *Pierce,* 151 Mass. 207.   He chose to conduct a place of amusement for the public, and his occupation and enjoyment of the demised premises has continued without interference by any wrongful act of the plaintiff.   Unless the allegations contained in the answer, and which for the purposes of this case are admitted by the demurrer to be true, entitle the defendant to be absolutely relieved, he must be held liable for the accrued rent.

There having been no tortious entry or physical ouster by the landlord, the tenant contends that by an order issued under the provisions of R. L. c. 104, §§ 36, 55, to furnish " additional means of egress for the use of occupants in case of fire or panic," as the premises were thereby rendered useless, a constructive eviction was wrought.

No covenant appears in the lease as originally executed requiring the plaintiff to provide adequate facilities of entrance and of exit to the leased property even though these changes were required of the lessee under R. L. c. 104, § 36, and there having been no interruption by him of the peaceable possession and beneficial use of the property by the defendant, the latter cannot in an action for the rent recoup damages he may have suffered

by reason of the order of the inspector. *Bartlett* v. *Farrington*, 120 Mass. 284.

Having remained in occupation of the estate, the defendant's obligation under·his covenant to pay rent is absolute, except so far as it may have been suspended by a breach on the part of the plaintiff of his covenant, that if the lessee pays the rent he " shall peaceably hold and enjoy the said rented premises without hindrance or interruption by the said lessor, or any person or persons whomsoever."

The lessor, however, did not engage to make even ordinary repairs, or to maintain the property in suitable condition for use and habitation as it was in at the date of the lease, and if the construction of additional exits was called for to make the building safe for the use of those attending the theatrical performances, and such alterations rightfully could be classed as repairs, the plaintiff was under no obligation to make them as this burden was cast upon the lessee, and a failure to do so did not constitute a breach of the covenant for quiet enjoyment. *Roth* v. *Adams*, 185 Mass. 341.

To constitute a constructive eviction which while it continues suspends the payment of rent it must affirmatively appear that by his intentional and wrongful act the landlord has deprived the tenant of the beneficial use and enjoyment of the whole, or a part of the leasehold. *Royce* v. *Guggenheim*, 106 Mass. 201. *De Witt* v. *Pierson*, 112 Mass. 8. *Colburn* v. *Morrill*, 117 Mass. 262. *Mirick* v. *Hoppin*, 118 Mass. 582. *Bartlett* v. *Farrington*, 120 Mass. 284. *Skally* v. *Shute*, 132 Mass. 367. *Smith* v. *McEnany*, 170 Mass. 26.

But the answer does not allege that the action of the inspector of public buildings was induced or incited by the plaintiff, and . if in the exercise of the police power extraordinary restrictions were imposed upon the use of the property there was no voluntary unnecessary act on the part of the landlord that tended to deprive the tenant of the premises, and which would bring the case within *Kansas Investment Co.* v. *Carter*, 160 Mass. 421 ; or *Grabenhorst* v. *Nicodemus*, 42 Md. 236.

The defendant moreover did not abandon the premises, but remained in occupation, and if the lessor had taken such action his conduct therefore would have been no defence to a suit for

the rent. *Boston & Worcester Railroad* v. *Ripley*, 13 Allen, 421. *International Trust Co.* v. *Schumann*, 158 Mass. 287, 291.

A further allegation is found that the designated changes could not be made without causing structural alterations outside of that portion of the building covered by the lease, but there is no averment that upon request the plaintiff refused his assent to such repairs being undertaken by the defendant so far as they might be required to enable him to comply with the order. Upon making such a request if it had been refused, and this action was found to have been taken solely for the purpose of preventing the defendant from realizing the full beneficial use and enjoyment of the estate, whether he could have quitted the premises and treated this refusal as a constructive eviction it is not necessary to decide. See *Sherman* v. *Williams*, 113 Mass. 481 ; *Skally* v. *Shute, ubi supra; Kansas Investment Co.* v. *Carter, ubi supra; International Trust Co.* v. *Schumann, ubi supra.*

We now come to the verbal agreement by which the plaintiff is said to have engaged to make the alterations.

While it may be said that the requirement which supports this promise rests upon a possible statutory liability which the defendant should have foreseen, and stipulated against, yet if not actually contemplated by the parties at the date of the lease, and hence forming no inducement for its execution by the lessee, he may show such an oral modification. *Durkin* v. *Cobleigh*, 156 Mass. 108, 109. *Rackemann* v. *Riverbank Improvement Co.* 167 Mass. 1. *Emerson* v. *Slater*, 22 How. 28. *Witbeck* v. *Waine*, 16 N. Y. 532. Compare *McGlynn* v. *Brock*, 111 Mass. 219. For this agreement, if founded upon a good consideration, would be valid and enforceable. *Rich* v. *Jackson*, 4 Bro. Ch. 514. *Hastings* v. *Lovejoy*, 140 Mass. 261, 265. *Thomas* v. *Barnes*, 156 Mass. 581. See *Vass* v. *Wales*, 129 Mass. 38.

If under it the defendant had gone forward either with, or, after reasonable notice, without, the assent of the plaintiff he could have recovered the expense incurred in adapting the building to meet the demand of the inspector, as the lessor would have been benefited by the enhanced value of the freehold. *Myers* v. *Burns*, 35 N. Y. 269. *Cornell* v. *Vanartsdalen*, 4 Penn. St. 364. *Hayward* v. *Leonard*, 7 Pick. 181.

It is equally plain that the benefit to the leasehold estate for

the remainder of the term was sufficient to support the promise on the part of the lessor. *Hastings* v. *Lovejoy, ubi supra. Emerson* v. *Slater, ubi supra.* Or it might be said that the lease as modified by the oral agreement constituted a substituted contract supported by the original consideration. *Thomas* v. *Barnes, ubi supra.*

Under a broad interpretation that the lease as thus amended demised a building to be used for the purposes of a theatre, in connection with which the plaintiff covenanted to provide additional means of exit if called for by the public authorities, a failure to perform the promise does not constitute a defence to this action.

When considered as a further covenant this agreement is strictly analogous to the ordinary undertaking of the landlord to make outside repairs, which is independent of the lessee's obligation to pay the rent reserved, and any neglect by the plaintiff to make the improvements promised, even if by force of the statute the premises without them became unfitted for use as a theatre, did not by reason of the breach so long as the defendant chose to occupy them, give to him any right to decline payment of the rent. *Kramer* v. *Cook,* 7 Gray, 550. *Leavitt* v. *Fletcher,* 10 Allen, 119, 121. *Royce* v. *Guggenheim, ubi supra. Skally* v. *Shute, ubi supra.* His remedy would be by an independent suit for damages, or when sued for the rent, by a counter claim in recoupment, which he has not pleaded. *Holbrook* v. *Young,* 108 Mass. 83, 85. See *Brown* v. *Holyoke Water Power Co.* 152 Mass. 463.

Under the pleadings this conclusion follows even if the defendant has failed to aver that the building was constructed after the passage of St. 1894, c. 382, the provisions of which were made applicable only to buildings thereafter erected for use as a theatre, and we are not called upon to decide whether the omission from R. L. c. 104, § 36, of the express words of limitation as to the time of erection found in the original statute indicates a legislative intention to put all buildings, whenever erected, and used in whole or in part for this purpose, on the same footing.

*Judgment affirmed.*