LONGWOOD TOWERS CORPORATION *vs.* MARIE .R. DOYLE.

Suffolk.    April 3, 1929. — May 31, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Landlord and Tenant*, Eviction.

Mere temporary defects in and want of repair of a suite in an apartment hotel do not give a tenant the right to quit the premises and refuse to pay further rent.

To constitute a constructive eviction of a tenant from such a suite there must appear intentional and wrongful acts on the part of the lessor or his servants or agents of such a character as to deprive the tenant of the beneficial use or enjoyment of the whole or of a part of the demised premises.

Evidence, introduced and offered by the defendant at the trial of an action for rent alleged to be due under a lease in writing of a suite of rooms in an apartment hotel, which tended to show inconveniences to the defendant from too much or too little heat, back-flush in the toilet, delayed delivery of purchased goods to the apartment, "animals" in the apartment, and delay in removal of garbage, did not require the submission to a jury of an issue, whether the defendant constructively had been evicted from the suite, if it did not fix with any degree of certitude the time when the several causes of complaint arose or how long thereafter the defendant continued to occupy the apartment and pay the reserved rent and there was no evidence that the conditions of alleged uninhabitability existed or were known to the lessor to exist when the premises were leased nor that the lessor did not remove the causes of the several complaints within a reasonable time after notice of them.

CONTRACT upon a lease described in the opinion.  Writ in the Municipal Court of the City of Boston dated May 23, 1928.

On removal to the Superior Court, the action was tried before *Walsh*, J.  Material evidence is stated in the opinion.

It was agreed that the amount due, if anything was due, was $703.81.  By order of the judge, a verdict was entered for the plaintiff in that sum.  The defendant alleged exceptions.

*I. D. Farquhar*, for the defendant.

*C. E. Fay*, (*E. S. MacMillan* with him,) for the plaintiff.

PIERCE, J.  This is an action of contract brought by the plaintiff as assignee of an indenture of lease, executed by Alden Park Manor, Inc., in Brookline, a Massachusetts corporation, and Marie R. Doyle, on April 28, 1925.  The declaration is in two counts, both for the same cause of action. Count one alleges rent due under a lease, a copy of which is annexed to the declaration; and count two alleges rent due for use and occupation.  The answer is a general denial, a plea of payment, a constructive eviction, and such equitable defences, if any exist, as are available to the defendant.

Before any evidence was adduced, it was agreed that title to Longwood Towers Corporation, formerly called Alden Park Manor, Inc. in Brookline, came by proper deeds, as well as by assignment from the receiver appointed by the Superior Court, into the hands of the present plaintiff; that the lease referred to in the plaintiff's declaration was duly executed by and between the plaintiff's assignor, Alden Park Manor, Inc., and the defendant, and that the present plaintiff was duly and properly assignee from said Alden Park Manor, Inc.; and that the apartment in issue was leased over again before the expiration of the lease in issue, so that the sum now claimed as rent due the plaintiff is $700, the same being for June, July, August and September, 1927, at the rate of $175 a month.  The defendant admitted she owed $3.06 for electricity and seventy-five cents for restaurant charges.  The plaintiff waived interest.

At the conclusion of the evidence, the judge directed a verdict for the plaintiff in the sum of $703.81, saying: "The plaintiff has offered a motion that a verdict be directed in its favor, which motion I am allowing, and I am ruling as a matter of law that, admitting all the testimony offered by the defendant to be true, there is no obligation to warrant the jury in finding that there was any intention of wrongful conduct on the part of the landlord or lessor of such a permanent character as would justify the jury in finding that this conduct was followed by the lessor for the purpose of constructively evicting Mrs. Doyle from her apartment; in other words, I am ruling as a matter of law that there is no evidence of any constructive eviction."

The case is before us on the defendant's exceptions to the allowance of the motion, to the direction of the verdict, and to the rulings of law. The bill of exceptions contains "a statement of all the pleadings, agreements of fact, evidence, rulings, and other matters necessary to enable the full court to pass upon the questions intended to be raised" by the defendant.

Longwood Towers Corporation, formerly Alden Park Manor, Inc. during the demise to the defendant consisted of three hundred apartments, with a common lighting and heating system. There was a common receiving room at which groceries were received and thence delivered to tenants by receiving clerks. Tenants did not go to the receiving room to get the groceries and domestics or servants of tenants were forbidden to go there to receive packages. The defendant lived at Alden Park Manor, Inc. from May 1, 1925, until some time in May, 1927, her apartment consisting of seven very small rooms. She had been a high-strung nervous woman all her life.

The defendant testified in substance as follows: In the winter time she had either too little or too much heat; that every time she did not have heat she called up the manager, told him she did not have enough heat and was informed "they would remedy it," but this was not always done, and she became nervous and had to have the attention of a physician. She "had trouble with the toilet two or three times"; on such occasions it would "back-flush," have "body waste in the hopper" and "smell." She "called up the management downstairs" and was told that they would fix it, but that it took "about two days to fix it and that she had to get out of the house and go to the Copley Plaza Hotel." She was continually having trouble with the delivery of food (groceries and provisions) to her apartment. She "kept house" in her apartment and supplied the food for the same herself. It was delivered in the receiving room "from which boys would bring it up to her apartment." After she gave an order to her grocer for food she would sometimes get her food on time, "'but as a rule it was late.' At those times when it was late she would not get the food until the next day,

in the meantime she would call up her grocer.  The delay in the delivery of food made her nervous and also obliged . . . [her] to go outside of Alden Park Manor or in the restaurant of Alden Park Manor for her meals."  She also said that "she was not very strong."

She further testified that she observed "animals" in her apartment.  She did not testify, and no evidence was excluded as she states in her brief it was, that the apartment "was infested by rodents, mice, vermin, cockroaches, and lice."  In this connection she testified, in substance, that she asked that a man be sent to inspect her apartment; that "a man did come up to inspect the premises," looked about to see if the "complaints were well-founded," and "said that he would attend to things downstairs."  The defendant was then asked whether she had had any disagreeable smells in her apartment "while she was there," or disagreeable noises. The answer was excluded and the defendant made no offer of proof.  She further testified that the means of garbage disposal was an incinerator which she had to open and into which she put the garbage; it was then supposed to go downstairs and be burned up, but "at times it wouldn't go down." A witness for the defendant, in substance, testified that banana oil with a disagreeable odor like ether was put on the floor of the corridor where the defendant's apartment was, and that the defendant spoke to the elevator boy about it.

The position of the defendant, as we understand it, is that the several items of complaint taken in combination warranted a finding of constructive eviction, even if no particular ground of complaint did.  It is to be noted the evidence does not fix with any degree of certitude the time when the several causes of complaint arose or how long thereafter the defendant continued to occupy the apartment and pay the reserved rent.  *International Trust Co.* v. *Schumann,* 158 Mass. 287, 291.  *Crommelin* v. *Thiess & Co.* 31 Ala. 412.  *Beecher* v. *Duffield,* 97 Mich. 423.  It is also to be observed that there is no evidence that the conditions of alleged uninhabitability existed or were known to the lessor to exist when the premises were leased, nor that the lessor did not remove the causes of the several complaints within a reasonable time after notice

of them. *Skally* v. *Shute*, 132 Mass. 367. Whatever duty, if any, rested upon the lessor to repair did not require it to keep the premises in good order at all times as respects temporary or incidental defects, and the defendant had no right to quit the premises and refuse to pay rent according to her covenant. Her remedy, if any, was by an action for damages. *Royce* v. *Guggenheim*, 106 Mass. 201. See *Nesson* v. *Adams*, 212 Mass. 429. To constitute a constructive eviction it must appear that the lessor has by his intentional and wrongful acts deprived the lessee of the beneficial use or enjoyment of the whole or a part of the demised premises. *Smith* v. *McEnany*, 170 Mass. 26. *Taylor* v. *Finnigan*, 189 Mass. 568, 573. *Hopkins* v. *Murphy*, 233 Mass. 476.

The evidence offered by the defendant did not warrant her defence of constructive eviction. As no other defence was relied on, the verdict was directed rightly for the plaintiff.

*Exceptions overruled.*