NATHAN ROME *vs.* HERMAN T. JOHNSON.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

Suffolk.   January 13, 14, 1931. — February 12, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Landlord and Tenant*, Eviction, Heat. *Contract*, Consideration. *Evidence*, Relevancy. *Practice, Civil*, Exceptions.

An act or omission of a permanent character by a landlord, or by his consent, with the intention and effect of depriving his tenant of the enjoyment of premises demised, or of any part thereof, of which the tenant then abandons possession, may be treated as an eviction. Per CROSBY, J.

At the trial together of actions of contract for rent under two leases of

adjoining portions of the top floor of a building in Boston, it appeared that the second lease was made about two months after the first and that thereupon the lessee, a manufacturer, with the permission of the lessor removed a partition wall between the premises described in the first and those described in the second lease and occupied the combined premises for the conduct of his business in which about thirty-five girls were employed. The premises were heated by steam in coils of pipe going around the room. The first lease contained a provision that the rent should "include the use of steam to heat the herein demised premises, as now piped, during the usual business hours of the usual business days of the heating season of the term of this lease." The second lease did not contain any provision relating to the furnishing of heat. There was evidence that during a certain winter in the term, especially before 10:30 A.M. and after 4 P.M., the girls had to wear sweaters, coats and overshoes to keep warm; that because of the extreme cold the oil used in machines retarded their operation; that at times on account of the cold the girls had to stand around and could not do their work; that the steam pipes were cold; that the defendant at various times during January, February, and March in that winter complained of lack of heat to the plaintiff and his agents; that, when the defendant paid his rent for January, it was agreed "that the defendant was to get heat and that if the defendant didn't get the heat promised he would have to vacate"; that heat was not given, and that on April 28 the defendant wrote the plaintiff enclosing a check for the May rent and notifying him that he would vacate the premises on May 31, which he did, and that heat was required at least until April 28. The jury, in answer to a special question, found that the defendant was evicted by the plaintiff, and found for the defendant. *Held*, that

(1) A finding was warranted that the payment of the January rent in the circumstances was consideration for the oral agreement of the plaintiff to furnish reasonable heat for the premises included in both leases if the defendant would not remove;

(2) Findings were warranted that such heat was not furnished, and that in the circumstances failure to do so amounted to a constructive eviction of the defendant;

(3) On all the evidence it could not have been ruled as matter of law that the defendant delayed an unreasonable time in vacating the premises after breach of the lease of the plaintiff and of the subsequent oral agreement as to heat.

Where a landlord fails to furnish heat as required by a lease or by a subsequent oral agreement, the tenant is not required to vacate the premises immediately, but is entitled to a reasonable time to do so after such breach; what constitutes a reasonable time is generally a question of fact, depending upon the circumstances of each case.

Exceptions to the refusal to permit witnesses at the trial above described to be asked whether any other tenant had complained about a failure to heat the premises were overruled, both because the questions were irrelevant and because the record did not disclose what the answers to the questions would have been.

SIX ACTIONS OF CONTRACT for rent under two leases. Writs in the Municipal Court of the City of Boston, the first and second dated July 14, 1928, the third and fourth dated August 4, 1928, and the fifth and sixth dated September 7, 1928.

Upon removal to the Superior Court, the actions were tried together before *Weed,* J. Material evidence and special findings by the jury are described in the opinion. The judge denied motions by the plaintiff that verdicts be ordered in his favor. There was a verdict for the defendant in each action. The plaintiff alleged exceptions.

*M. Israel,* for the plaintiff.

*H. L. Barrett,* (*W. F. Levis* with him,) for the defendant.

CROSBY, J. These are six actions of contract to recover rent under two written leases of adjoining portions of the top floor of a building in Boston. One of the leases, hereafter referred to as the first lease, is dated November 17, 1926, and the other, hereafter referred to as the second lease, is dated January 20, 1927. The amended answers plead, among other things, that the leased premises were surrendered by the defendant, thereby extinguishing any liability of the defendant to pay rent. The answers further plead that the defendant was evicted from the premises by the failure of the plaintiff to furnish satisfactory, and a proper amount of, heat, by reason of which the defendant properly was authorized to terminate his liability under both leases, and that because of such failure they were thereby terminated. The cases were originally brought in the Municipal Court of the City of Boston, and were afterwards removed to the Superior Court where they were tried together before a judge and a jury. Two special questions were submitted to the jury as follows: " 1. Was the defendant evicted by the plaintiff from the leased premises? 2. Were the leased premises surrendered by the defendant and such surrender accepted by the plaintiff? " Both of these questions were answered by the jury in the affirmative, and a verdict was returned for the defendant in each case. The cases are before us on exceptions to the denial of written motions for directed verdicts in favor of

the plaintiff, and to the denial of motions for a new trial. The plaintiff also excepted to the exclusion of certain evidence.

It is agreed " that in making out his defence of ' constructive eviction ' the defendant relied entirely on the evidence relating to heat, and . . . that in making out his defense of surrender and acceptance of possession the defendant relied entirely on the evidence of turning over the keys to the janitor of the building of which the premises demised " by the leases above referred to form a part. The first lease contains the following provision: " It is understood and agreed the hereinbefore named rent shall include the use of steam to heat the herein demised premises, as now piped, during the usual business hours of the usual business days of the heating season of the term of this lease, subject, however, to interruption on account of accidents, repairs, strikes, etc., or causes beyond the control of the Lessor." The second lease covered the remainder of the top floor which was not included in the first lease. It did not contain any provision relating to the furnishing of heat. When the first lease was executed there was a partition wall which separated the premises demised by that lease from those covered by the second lease. When the latter was executed the partition wall was removed by the lessee with the permission of the lessor, and the lessee occupied the premises described in both leases for the conduct of his business. Steam for heating the entire building was purchased by the plaintiff from the owner of the heating plant of a building across the street. The premises described in both leases were equipped with a series of coil pipes which ran around the walls of the entire floor and could be used for heating the space covered by both leases. Heat could have been used in the premises described in the second lease by turning a valve. The premises were occupied by the defendant largely for the manufacture of ladies' underwear, and about thirty-five girls were so employed. There was evidence tending to show that during the winter of 1927–1928, especially before 10:30 A.M. and after 4 P.M., the girls had to

wear sweaters, coats and overshoes to keep warm, and that because of the extreme cold the oil used in the machines slowed up their operation; that at times on account of the cold the girls had to stand around and could not do their work, and that the steam pipes were cold. There was evidence that the defendant at various times during January, February, and March, 1928, complained of lack of heat to the janitor of the building, to the plaintiff's agent, Slovin, who collected the rents and had general charge of this and other property of the plaintiff, and to the plaintiff.

There was ample evidence to warrant the jury in finding that there was a constructive eviction of the defendant under the first lease for failure of the plaintiff properly to heat the premises therein described. There was further evidence introduced by the defendant of a conversation between him and Slovin, on January 17, 1928, at which time it was agreed, in substance, that when the defendant on that day gave his check for the January rent it was the understanding that the defendant would be supplied with heat for the premises covered by both leases, and that if it was not furnished so that his employees could work comfortably and efficiently he would have to vacate the premises. Notwithstanding this conversation, there was evidence tending to show that there was no improvement in the heating conditions, and that on April 28, 1928, the defendant wrote the plaintiff enclosing a check for the May rent and notified him that he would vacate the premises on May 31, 1928. In reply the plaintiff wrote the defendant that he would hold him for the full term of the lease. On May 31, 1928, the defendant vacated the premises and delivered the keys to the plaintiff's janitor. About the middle of July following, the janitor told Slovin that he had the keys and the latter told him to return them to the defendant, which was done; about four days later the defendant brought them back and left them with the janitor.

The demised premises under both leases carried with them an implied covenant of quiet enjoyment as matter of law. The lessee was entitled to the beneficial use of

the premises so far as given to him under the leases or under any subsequent oral agreement entered into between the parties with respect to the promise of the lessor to furnish heat for the premises covered by the second lease. *Hastings* v. *Lovejoy,* 140 Mass. 261. *King* v. *Faist,* 161 Mass. 449, 456. *Freedman* v. *Gordon,* 220 Mass. 324, 326. *Conroy* v. *Toomay,* 234 Mass. 384; *S. C.* 255 Mass. 87, 90. *Ashkenazy* v. *O'Neill,* 267 Mass. 143. We are of opinion that it was a question of fact for the jury to decide upon all the evidence whether such oral agreement was entered into. If, as the jury could have found, the plaintiff agreed that as a condition that the defendant should continue to occupy the premises he should be furnished with a reasonable amount of heat, such agreement constituted a valid consideration for the promises. *Conroy* v. *Toomay,* 255 Mass. 87, 90, and cases cited. The evidence warranted a finding that during the winter months the plaintiff failed properly to heat the premises occupied by the defendant under both leases; that the defendant and his employees suffered from the extreme cold by reason of the failure of the plaintiff to carry out his agreement to furnish heat. The testimony of the defendant, and that of the witness Rosenthal, that the check for rent for the month of January was given to the plaintiff " with the understanding that the defendant was to get heat and that if the defendant didn't get the heat promised he would have to vacate " were sufficient to warrant a finding that the plaintiff orally agreed to heat the premises described in both leases. As there was ample evidence to show that such agreement was not complied with by the plaintiff, the defendant could treat such failure as a constructive eviction entitling him to vacate the premises and absolving him thereafter from the payment of rent. *Royce* v. *Guggenheim,* 106 Mass. 201, 202. *Sherman* v. *Williams,* 113 Mass. 481, 485. *Fillebrown* v. *Hoar,* 124 Mass. 580. *McCall* v. *New York Life Ins. Co.* 201 Mass. 223, 226. *Nesson* v. *Adams,* 212 Mass. 429. *Boston Veterinary Hospital* v. *Kiley,* 219 Mass. 533. *Conroy* v. *Toomay, supra. William A. Doe Co.* v. *Boston,* 262 Mass. 458, 461. Any act or omission of a permanent

character by the landlord, or by his consent, with the intention and effect of depriving the tenant of the enjoyment of the premises demised, or of any part thereof, of which he abandons possession, may be treated as an eviction. Upon the facts the jury could have found that the demised premises by reason of the lack of sufficient heat were entirely unsuitable for the purpose for which they were hired and for which alone they could be used under the terms of the leases. Such facts, if found, would have shown an eviction at the election of the lessee and he might rightfully abandon the premises and refuse to pay further rent. *McCall* v. *New York Life Ins. Co. supra.*

It was an affirmative defence with the burden of proof resting upon the defendant. *Leavitt* v. *Maykel,* 210 Mass. 55. *Taylor* v. *Kennedy,* 228 Mass. 390, 392. *Lincoln* v. *Finkelstein,* 255 Mass. 486, 490. *Longwood Towers Corp.* v. *Doyle,* 267 Mass. 368, 372.

It is the contention of the plaintiff that as matter of law the defendant did not vacate the premises within a reasonable time after the alleged failure of the plaintiff to supply heat, and solely because of such failure. There was evidence from which it could have been found that in January, 1928, the defendant repeatedly complained to the plaintiff's janitor and to the plaintiff's agent, Slovin, of the failure to furnish sufficient heat, and that those complaints continued to be made during the months of February and March; that he complained to the plaintiff about it in March, but sufficient heat was not supplied; that on April 28, 1928, the defendant by letter notified the plaintiff that because of certain breaches on the part of the plaintiff he would on May 31, 1928, vacate the premises.

It is settled that where a landlord fails to furnish heat as required by a lease or by a subsequent oral agreement the tenant is not required to vacate the premises immediately, but is entitled to a reasonable time to do so after such breach, and that what constitutes a reasonable time is generally a question of fact. *DeWitt* v. *Pierson,* 112 Mass. 8, 11. *Minneapolis Co-operative Co.* v. *Williamson,*

51 Minn. 53, 57. *Automobile Supply Co.* v. *Scene-in-Action Corp.* 340 Ill. 196. What is a reasonable time depends upon the circumstances of each case including the size of the leased premises, the purposes for which they are occupied by the tenant, the personal property and fixtures owned by the tenant, the place where they are located, and the time reasonably required to remove them, with known weather conditions in New England and the difficulty of securing another location suitable for the conduct of the defendant's business. The record shows that the leased premises consisted of the entire top floor of the building; that the purposes for which they were to be used were " for storage, display, manufacturing and sale of ladies' undergarments." It appears that there were thirty-five girls employed; that some of them operated machines used in such manufacture; that there was an office which was partitioned off from the factory, also a private office of the defendant, and there was a show room where customers came to examine the goods. It could have been found that during the months of January, February and March the defendant repeatedly made complaint to the plaintiff's agent, Slovin, and to the janitor because of lack of heat during these months, and it could further be found that heat was required during the month of April at least up to the time the defendant notified the plaintiff by letter on April 28 that he would vacate the premises on May 31. On all the evidence it could not have been ruled as matter of law that the defendant acting reasonably could have vacated the premises before May 31. We are of opinion that it was a question of fact for the jury to determine upon proper instructions. See *Fuller* v. *Ruby,* 10 Gray, 285; *International Trust Co.* v. *Schumann,* 158 Mass. 287, 291; *Boreel* v. *Lawton,* 90 N. Y. 293, 297. In *Callahan* v. *Goldman,* 216 Mass. 238, cited by the plaintiff, it appeared that if acts of the landlord would justify the tenant in treating such acts as an eviction, but instead of surrendering the demised premises he remained in possession for a year thereafter, he had elected not to treat the acts of the landlord as an eviction and he could not maintain an action

for breach of a covenant for quiet enjoyment. The facts in that case are plainly distinguishable from those in the case at bar. The judge's charge is not printed in the record and no exception was taken to any part of it. It is to be assumed that full and correct instructions were given upon all issues presented.

As there was ample evidence to warrant a finding that by reason of the failure of the plaintiff to furnish sufficient heat the defendant was constructively evicted, we need not consider whether the leases were terminated by surrender of the premises by the delivery of the keys to the plaintiff's janitor.

The question asked the plaintiff's agent, Slovin, on direct examination, whether any other tenant complained about a failure to heat the premises, and a similar question asked the plaintiff's janitor, Fitzgerald, by the plaintiff's counsel on cross-examination were rightly excluded. It did not appear what the answers to these questions would have been; besides, if the answers would have been in the negative, they would have had no tendency to show what the conditions as to heat were on the top floor of the building occupied by the defendant. The exceptions to the exclusion of these questions must be overruled.

The exceptions to the denial of the plaintiff's motions for a new trial are without merit. Whether the motions should have been allowed rested in the sound judicial discretion of the trial judge, and there is nothing to show an abuse of such discretion. No error of law is disclosed by the record in the conduct of the trial; the entry in each case must be

*Exceptions overruled.*