Lenk, J.
This case arises from a landlord-tenant dispute concerning two separate commercial spaces located at 60-90 Madison Street in Worcester, Massachusetts. The plaintiff Philip Shwachman (“Shwach-man”) commenced the present action against the defendants Davis Radio Corporation (“Davis Radio”) and Davis Advertising, Inc. (“Davis Advertising”) alleging breach of the rental agreements, property damage, and unfair and deceptive acts in violation of G.L.c. 93A (Counts I and IV). In addition, Shwachman seeks to recover against Jeffrey Davis and Andrew Davis,[3] in their capacity as guarantors of the leases, for breach of the rental agreements and for violations of G.L.c. 93A (Counts II, III, V, and VI). Shwachman now brings this motion for summary judgment on all counts pursuant to Mass.R.Civ.P. 56. In opposition, the defendants assert that they were constructively evicted from the leased premises, and accordingly summary judgment is inappropriate.
BACKGROUND
The following facts are undisputed.[4] On July 7,1988, Davis Advertising signed a five-year lease with Shwach-man for the rental of commercial space located at 60-90 Madison Streetin Worcester, Massachusetts. Commencing on November 1, 1988 and terminating on October 31, 1993, the lease contained provisions for rent,[5] utilities,[6] conditions of default,[7] and parking places.[8] Davis Advertising entered the leased premises at the commencement of the rental period without incident and began to operate its advertising agency. On September 18, 1990, Davis Radio signed a three-year lease with Shwachman for the rental of commercial property located at 90 Madison Street in Worcester, Massachusetts. Commencing on November 1, 1990 and terminating on October 31, 1993, this lease had similar provisions as the Davis Advertising lease regarding lessor obligations and conditions of default. The Davis Radio lease differed, however, with respect to rent,[9] utilities,[10] and parking spaces.[11] Davis Radio also moved into the rental property at the inception of its lease term without incident and used the location to operate ‘WORC,” a radio station which broadcasts twenty-four hours a day.
In January of 1992, Shwachman leased space above Davis Advertising to the Pampered Pet Dog Grooming Shop (“Pampered Pet”). Subsequently, Davis Radio and Davis Advertising complained orally to Shwachman on several occasions regarding the smell from Pampered Pet which had caused several employees to become ill.[12] Davis Advertising contends the premises became uninhabitable due to the odor, noise, and general unsanitary conditions emanating from Pampered Pet.
Davis Radio and Davis Advertising also complained to Shwachman concerning the lack of proper heat and air conditioning, ineffective magnetic locks, insufficient security in the parking area,[13] violations of the parking agreement, and property damage caused by a water leak which destroyed two computers, work papers, and bookkeeping records. The attorney for both Davis Radio and Davis Advertising sent to Shwachman a letter dated December 7, 1992, complaining of the lack of heat. Davis Radio contends that these incidents caused significant disruption to its program operations resulting in a loss of revenue and jeopardizing its “FCC licenses.”[14] Aff. Andrew Davis, para. 3(d). As a result of these conditions, Davis Radio and Davis Advertising vacated their respective rental premises in March 1993, claiming constructive eviction.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc. 404 Mass. 14, 16-17 (1989).
Originally at common law, a lease agreement created a property relationship between the landlord and tenant. See Boston Housing Auth. v. Hemingway, 363 Mass. 184, 198 (1973) (discussing evolution of landlord-tenant law). Today, however, the landlord-tenant relationship is viewed as contractual in nature wherein the landlord promises to deliver and maintain the premises in a habitable condition and the tenant promises to pay rent for the use thereof. See id. at 198-99 (discussing contractual nature of landlord-tenant relationship). While a warranty of habitability *494 is implied in residential leases,[15] “no such warranty-may be implied in the rental of commercial property.” Buker v. National Management Corp., 16 Mass.App.Ct. 36, 41, appeal denied, 389 Mass. 1104 (1983). See Boston Housing Auth. v. Hemingway, 363 Mass 184, 198 (1973) (warranty of habitability implied in residential leases); Gade v. National Creamery Co., 324 Mass. 515, 518-19 (1949) (distinguishing warranty of habitability in residential leases as the exception). Although the lessor may expressly warrant for the habitability of commercial property, there is no evidence proffered by either party of such a warranty. Buker v. National Management Corp., 16 Mass.App.Ct. 36, 42, appeal denied, 389 Mass. 1104 (1983). Accordingly, the defendants cannot rely on a breach of warranty of habitability as the reason for their departure.[16]
An implied covenant of quiet enjoyment exists in every lease. E.g. Blackett v. Olanoff, 371 Mass. 714, 714-15 (1977); Dyecraftsman, Inc. v. Feinberg, 358 Mass. 485, 489 (1971); Winchester v. O’Brien, 266 Mass. 33, 36 (1929). “The implied covenant is a promise that, during the term of his tenancy, the tenant shall not be disturbed in the enjoyment of the premises by the lessor or anyone claiming under him or by anyone claiming paramount title.” Rahman v. Federal Management Co., 23 Mass.App.Ct. 701, 705, rev. denied, 400 Mass. 1102 (1987). Where there is a breach by the landlord of the covenant of quiet enjoyment, the tenant may raise the defense of constructive eviction. Charles E. Burt, Inc. v. Seven Grand Corp., 340 Mass. 124, 127 (1959). Constructive eviction is also a defense for the nonpayment of rent. Boston Housing Auth. v. Hemingway, 363 Mass 184, 202-03 (1973). The burden of proving constructive eviction lies with the tenant. Rome v. Johnson, 274 Mass. 444, 450 (1931).
Not every act done by the landlord constitutes constructive eviction. Tracy v. Long, 295 Mass. 201, 204 (1936). For instance, conduct which is “slight or temporary in effect" does not entitle the tenant to abandon the premises. See id. (single act of disconnection of water pipe for three or four days not permanent or substantial). Rather, to constitute constructive eviction, “there must be some act of permanent character done by the landlord with the intent and effect of depriving the tenant of enjoyment of the premises or some part thereof, to which the tenant yields, abandoning the premises within a reasonable time.” Id. at 203. See Charles E. Burt, Inc. v. Seven Grand Corp., 340 Mass. 124, 127 (1959) (tenant successfully proved constructive eviction where landlord failed to provide light, heat, power, and elevator service); Westland Housing Corp. v. Scott, 312 Mass. 375, 381 (1942) (constructive eviction where soot and smoke caused by oil burner persisted for a period of time); Winchester v. O’Brien, 266 Mass. 33, 36 (1929) (remodeling of building by landlord caused excessive noise, precluded tenant’s access, and interfered with tenant’s business amounting to a constructive eviction). The landlord’s conduct is controlling; the law assumes that he intends the “natural and probable consequences of what the [he] did, what he failed to do, or what he permitted to be done.” Blackett v. Olanoff, 371 Mass. 714, 716 (1977).
In the instant case, the submissions by the defendants indicate an ongoing disruption caused by Pampered Pet. Whether the smell was so oppressive as to constitute constructive eviction is an issue for the jury. Accordingly, the defendants have made a colorable claim for constructive eviction.
Shwachman contends, however, that the defendants failed to vacate the leased premises within a reasonable time of the alleged breach. In opposition, the defendants claim they vacated the premises in a reasonable time after repeated oral complaints concerning lock-outs, heat and air conditioning disruptions, and the odor emanating from Pampered Pet which rendered the premises uninhabitable.
Whether a tenant vacates the premises within a reasonable time is generally a question of fact. Palumbo v. Olympia Theaters, Inc., 276 Mass. 84, 88 (1931); Rome v. Johnson, 274 Mass. 444, 450-51 (1931); DeWitt v. Pierson, 112 Mass. 8, 11 (1873). But see A.W. Banister Co. v. P.J.W. Moodie Lumber Corp., 286 Mass. 424, 426-27 (1934) (tenant unsuccessful where he remained in premises despite landlord’s breach); Palumbo v. Olympia Theaters, Inc., 276 Mass. 84, 88 (1931) (tenant remained in possession for eleven months after complaint found not reasonable time). A reasonable time “depends upon the circumstances of each case including the size of the leased premises, the purposes for which they are occupied by the tenant, . . . and the difficulty of securing another location suitable for the conduct of the [ ] business.” Rome v. Johnson, 274 Mass. 444, 451 (1931). Where, as here, the timeliness of the defendants’ departure raises a factual issue, its resolution is properly left for ajuiy.
Because Shwachman’s claims under G.L.c. 93A directly relate to the defendants’ conduct in abandoning the premises, they cannot be properly resolved at this time. Additionally, Shwachman’s failure to proffer any evidence supporting his claim for property damage is fatal to his motion for summary judgment. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989) (moving party must affirmatively demonstrate the lack of triable issue under Mass.R.Civ.P. 56).
ORDER
For the foregoing reasons, the plaintiffs motion for summary judgment is DENIED.

 See supra note 2.

 Shwachman concedes the defendants’ allegations for purposes of this motion.

 The lease provided for rental payments at the rate of twenty-eight hundred seventy-five dollars ($2,875) per month. Lease Agreement C, para. 4.

 Shwachman agreed to “furnish and pay for reasonable heat and air conditioning to the leased premises and lavatories during normal business hours on regular business days . . ." Lease Agreement C, para. 7.

 In the event of default by the lessee, the lessor had the right:
to re-enter and take complete possession of the leased premises, to declare the term of this lease ended, and remove the Lessee’s effects, without prejudice .. . Lessee shall indemnify the Lessor against all loss of rent and other payment which the Lessor may incur by reason of such termination during the residue of the term.
Lease Agreement C, para. 19(a).

 An addendum to the rental agreement entitled Davis Advertising to nine free parking permits at Madison Place (located across the street from the rental premises) or at another location within one thousand feet of the rented premises.

 The lease provided for a monthly rent of seven hundred twenty-five dollars ($725). Lease Agreement A, para. 4.

 The utility provision provided, in pertinent part:
the lessor agrees to provide utility service and to furnish reasonably hot and cold water and reasonable heat and air conditioning to the leased premises and lavatories during normal business hours on regular business days of the heating and air conditioning* seasons of each year. ‘Normal business hours are 8 A.M. to 6 P.M. weekdays and Saturdays 8 AM. to 1 P.M.
Lease Agreement A para. 7.

 Navis Radio is entitled to three free parking permits for the Lessor’s parking lot, located at 160 Southbridge Street. See Addendum, Lease Agreement A

 Davis Advertising claims the odor from Pampered Pet was so oppressive that one of Davis Radio’s employee’s threatened to quit work because she feared the smell would have a deleterious effect on her pregnancy.

 Another employee quit working for Davis Radio after two assaults en route to the parking lot.

 The FCC requires that the station stay in operation twenty-four hours a day. Aff. Andrew Davis, para. 3(d).

 Nevertheless, the general rule is that covenants in leases are independent, absent a clear indication to the contrary. Barry v. Frankini, 287 Mass. 196, 201 (1934); Sniger v. Fentin, 4 Mass.App.Ct. 215, 217 (1976).

 Although Shwachman correctly states that no warranty of habitability is implied in commercial leases, see discussion supra, the defendants have not asserted such a defense. Rather, the defendants’ sole defense is grounded upon the doctrine of constructive eviction as discussed below.