McNALLY ET AL. *v.* MOSER ET UX.

[No. 169, October Term, 1955.]

128

*Decided May 8, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Clayton A. Dietrich,* with whom was *Edward F. Borgerding* on the brief, for appellants.

*Lawrence I. Weisman* and *David M. Blum,* with whom were *Nyburg, Goldman & Walter* and *M. Peter Moser* on the brief, for appellees.

HAMMOND, J., delivered the opinion of the Court.

This is an appeal by lessees, and the guarantors of their obligations under the lease, from a declaratory judgment in favor of the landlords that the lease remained in effect and the rent continued payable month by month, against a defense that the zoning ordinances prohibited the use of the leased premises for the purposes contemplated by the lease.

In 1940, the appellees, Dr. Simon Moser, a chiropractor, and his wife, a physiotherapist, purchased the three story building in Baltimore known as 2923 N. Charles St. and began to use the upper floors for their home and the ground floor as their professional offices. Brendan McNally, an appellant, knew the Mosers when he was in chiropractic school, and when he was graduated, came into their office to observe the treatment of patients. When he received his license to practice, he became a full time assistant of Dr. and Mrs. Moser. In 1951, Dr. Moser became ill of Parkinson's disease and soon was almost completely disabled. He arranged to sell his practice and his equipment to Dr. McNally. There was executed a contract of sale whereby all the equipment and the good-will were sold for $10,000, with the major part of the sales price represented by a promissory note (secured by a chattel mortgage on the equipment) payable in monthly in-

stallments beginning November 1, 1951, and ending October 1, 1955. As part of the deal there was a ten year lease for the ground floor offices at a rental of $125.00 a month for the first four years and $150.00 a month for the next six years. Under the terms of the lease, the Mosers had the right to terminate the tenancy after four years upon giving due notice, and Dr. McNally had the right to extend the lease for an additional five years beyond the ten year period. A. W. Harrison and Minnie Harrison, the father and mother of Mrs. McNally, unconditionally guaranteed the full and faithful performance of the McNallys under the lease.

Matters went on uneventfully for sometime. Dr. and Mrs. Moser helped Dr. McNally to keep and increase the practice. Dr. Moser made himself available for reasonable periods of consultation and kept his name on the door, and Mrs. Moser made appointments for Dr. McNally and otherwise helped him as much as she could. In early November, 1954, Dr. McNally informed the Mosers that it was his understanding that the lease terminated on October 1, 1955, and that he intended to vacate and stop paying rent on that date. On November 11, 1954, the Mosers' counsel wrote Dr. and Mrs. McNally, advising them that the lease remained in effect according to its terms until September 30, 1961, and that unless the McNallys indicated their intention of honoring the lease, a proceeding would be instituted for a declaratory judgment establishing its validity and their obligations under it. On November 18, 1954, Dr. McNally's lawyer wrote a letter to the Building Inspector of Baltimore City, asking whether the use of the premises as a non-resident professional office complied with the zoning law. Four days later, the reply from the Building Inspector's office was: "* * * this property may not be used for a doctor's office unless the doctor resides on the premises * * *." Dr. McNally took no action and made no move until October 1, 1955, and did not, in any way, disclose to the Mosers his inquiry or the result, or make any effort, either on his own or through the Mosers, to obtain official permission to continue the use of the leased premises as professional offices.

On February 18, 1955, the Mosers brought a proceeding for

a declaratory judgment against the McNallys and the Harrisons, reciting the execution and guarantee of the lease, the notice of the intention to quit, the failure of the defendants to answer the letter from the Mosers asking acknowledgment of liability under the lease, and concluding with a prayer for a declaration of the rights and interest of the Mosers under the lease. Two weeks later, by letter dated March 2, 1955, the acting zoning enforcement officer of Baltimore notified Dr. and Mrs. Moser to discontinue the use of the leased premises as a non-resident office. On March 17, 1955, after the zoning enforcement officer's attention had been called to the declaratory judgment proceeding, he agreed "to stay any further proceedings" until the litigation was concluded. A demurrer to the petition was filed and overruled in April. An answer was filed, wherein the appellants alleged that "the use of the premises in question as a doctor's office for the practice of chiropractic was contrary to the provisions of Article 40 of the Baltimore City Code of 1950 as revised by Sections 10, 11 and 41 of Ordinance No. 711, approved May 21, 1953, known as the Zoning Ordinance, since the occupant of the basement office does not reside on the property in question; that the said Acting Zoning Enforcement Officer for Baltimore City directed the Plaintiffs by said letter (Plaintiff's Exhibit A) to discontinue the use of the premises as a doctor's office at once; * * *." The answer also contained the following assertion: "that the lease in question is null and void since the purpose and terms of said lease were in violation of the provisions of the Baltimore City Code of 1950, as revised by Section 9 of Ordinance 444, approved April 23, 1941, and other pertinent sections of the then existing Zoning Ordinance, when said lease was signed by the Plaintiffs and Defendants; furthermore, that the lease is null and void since the purpose and terms of said lease violate the provisions of Article 40 of the Baltimore City Code of 1950, as revised by Sections 10, 11 and 41 of Ordinance No. 711, approved May 21, 1953, which was the prevailing Zoning Ordinance in the City of Baltimore at the time of the filing of the Plaintiff's Petition for Declaratory Judgment."

The case was tried on October 4, 1955, and judgment was

entered in favor of the Mosers, declaring that the lease continued in force until September 30, 1961; that the defendants' liability for the stipulated monthly rental continued; that the Mosers had the privilege of entering and re-letting the premises, but had no duty to do so; that the defendants remain liable for the payment of the rental provided for, less any rentals received by plaintiffs if they elected to re-let; and finally, that the Mosers should recover the rent for the month of October, 1955. Dr. McNally moved out of the leased premises on October 1, 1955—the day that he said almost a year before that he would move. October 1, 1955, was also the date for the last payment under the note and mortgage which secured the bill of sale for the equipment to Dr. McNally.

The defense of the appellants, based on illegality, has two prongs. The first is that the lease was an illegal bargain when it was made because the zoning ordinances then in effect made illegal the use of the leased premises for non-resident professional offices, and second, that Zoning Ordinance No. 711, adopted in May, 1953, made the previous use illegal. There was not at the trial, and is not here, any contention that the lease does not continue until 1961 unless the appellants are right in their contention as to illegality. It was they who pleaded illegality, it is they who had the duty of producing evidence to show it, and finally, it is they who had the burden of persuading the court that they had established the illegality. One who relies on illegality, failure of consideration or other affirmative defenses, has imposed on him the burden of persuasion. *Borchard, Declaratory Judgments,* 2nd Ed., p. 405-9. *Shedlinsky v. Budweiser Brewing Co.* (N. Y.), 57 N. E. 620; *Dickson v. Uhlmann Grain Co.,* 288 U. S. 188, 77 L. Ed. 691; *Palmer v. Chamberlin* (C. A. 5th), 191 F. 2d 532; *Romanus v. Biggs* (S. C.), 51 S. E. 2d 503; *Bryan v. Pasadena Holding Co.* (Calif. App.), 35 P. 2d 334.

Courts do not ordinarily take judicial notice of the ordinances of Baltimore. *Givner v. Cohen,* 208 Md. 23, 30. The appellants did not prove the ordinances on which they rely, nor do they quote or identify with particularity the legal

significance of the sections of the ordinances on which they depend to show illegality. In determining whether the lower court erred in holding that the appellants had not met the burden of persuasion, we limit our consideration to so much of the ordinances and their effect as was revealed by the testimony in the case. *Field v. Malster,* 88 Md. 691; *Givner v. Cohen, supra; Central Savings Bank v. Baltimore,* 71 Md. 515. Within this limit the record shows no proof that in 1951, when the lease was entered into, the zoning ordinances prohibited the use of parts of residences for professional offices by non-residents. Far from showing that the parties knew or contemplated that such use was forbidden, the evidence tends to show that both the landlords and the tenants assumed that the use was and would continue to be legal. Dr. McNally testified that the first he knew of the possibility of illegality was in 1954. It was shown that the Mosers, seven years after they had begun to use their North Charles Street home as an office, had secured a permit to do so, on which there was a notation "Doctor resides on premises" but their testimony was that they did not know that a doctor who did not reside on the premises could not use the offices for professional purposes, and their first knowledge that zoning had any relevance in the case was after the suit for declaratory judgment was filed. Each side, at the time of the sale of the practice and the making of the lease, was represented by experienced counsel, and there is no suggestion that it was thought necessary to take zoning into account in any way.

The acting zoning enforcement officer of Baltimore testified as to the inquiry of 1954 by Dr. McNally's lawyer and his reply, and as to the sending of the March 2, 1955, notice to the Mosers that the use of the premises by Dr. McNally was forbidden by the zoning ordinance, and the March 17, 1955, letter to counsel for the Mosers that enforcement would be stayed until the litigation was concluded. There is nothing in this correspondence which compels or clearly leads to the inference that prior to 1953 the ordinance prohibited the use for which the premises were leased. Judge Manley, in his decision, said the question was, at the least, debatable. The impression from the writings from the zoning enforcement office

is that it was, in their view, the 1953 ordinance (which created a residential and office use district, under the terms of which professional men could have offices in their homes and non-residents could not have such offices in the homes of others) that made Dr. McNally's office in the Moser home a violation of the law. It is not unreasonable to infer that it would not have been necessary to enact the 1953 ordinance had the earlier ordinances accomplished the result that it, apparently, was passed to accomplish. The zoning enforcement officer testified that his records showed that some non-resident professional men had received permits from the board of zoning appeals prior to 1953 to have offices in residences. Judge Manley asked him whether the board had not undergone a change of heart on such applications a few years ago—had not the board changed what it previously had been doing—and the witness answered that this was so "With the introduction of the revised zoning ordinance in 1953, which established an office use district." We think that the appellants failed to produce evidence that required the court to be persuaded that the lease was an illegal bargain when it was entered into.

If it was the ordinance of 1953 that made illegal a use theretofore legal, this supervening happening might have created an impossibility of performance or a frustration of the purposes of the lease, that would allow the tenants to terminate the lease and end their responsibility under it. This is so because, as we have noted, it was not contemplated by the parties that there would be any impossibility or frustration and the tenants did not bind themselves to pay rent regardless of any such happening, although they could bindingly have done so, since the bargain would not have been against public policy or public morals. *Restatement, Contracts,* Sec. 458, and see also Sec. 456, Comment (c), Illus. 2, and Sec. 457. The principles of the Restatement have been variously applied in the following cases: *Wischhusen v. Spirits Co.,* 163 Md. 565, 572 *et seq.; Fast Bearing Co. v. Precision Development Co.,* 185 Md. 288, 307 *et seq.; State v. Dashiell,* 195 Md. 677, 689 *et seq.; Baltimore Luggage Co. v. Ligon,* 208 Md. 406, 417 *et seq.*

It was the appellants who asserted that they had been relieved of their liability under the lease and who had the burden of persuading the court that Ordinance No. 711 of 1953 produced the result that they claim—that the use of the leased premises for a professional office was impossible in fact. The appellants offered neither witnesses nor other evidence requiring such a finding. The zoning enforcement officer, testified that two physicians, who had been using residential premises in the Charles St.-St. Paul St. area for offices while living elsewhere, had challenged the ruling of the board that they must cease such use after the passage of the 1953 ordinance. One was a Dr. Beck and the other, a Dr. Tillman. Each had appealed to the Baltimore City Court, Dr. Beck intervening in the suit of Mrs. Jones, his landlady, and Dr. Tillman appealing in his own right. The basis of their appeals was that the zoning ordinances prior to 1953 had not rendered the use they had made of the premises unlawful and that, therefore, at the effective date of the 1953 ordinance, they had a non-conforming use which they had an absolute right to continue. The cases had been pending about a year, the witness said. The enforcement officer testified further that until the cases were decided, no non-resident professional men in the Charles St.-St. Paul St. area would be required to cease the use of their offices. He said indeed that the ordinances themselves required that enforcement be withheld until the cases were decided. Other evidence was that the enforcement office would give those notified to move thirty to sixty days to formally protest, and that the ten days for appeal to the Board, provided by its rules, would not begin to run until the expiration of the thirty or sixty day period. It was shown that before the passage of the 1953 ordinance, non-resident professional men had been granted permits for office use in the Charles St.-St. Paul St. area and that the 1953 ordinance gave the Board of Municipal and Zoning Appeals the same power to make special exceptions as had the previous ordinance. It could not be said in any case, until the board had acted, and then the courts, on appeal had acted, whether or not a particular residential premise could or could not be used by non-resident doctors.

The evidence was that Dr. McNally himself had set in motion the chain of events that resulted in the zoning enforcement people sending the Mosers the notice to stop using 2923 N. Charles St. as an office. He himself testified that he had made no effort to obtain a variance or a special permit or to establish a non-conforming use, and that he had not requested the Mosers to do so. He was quite frank in his testimony that he thought the lease was for only four years and that he sought by any means which he regarded as legitimate to avoid any responsibility under it after the four year period. It is not necessary to decide whether Dr. McNally's covenants in the lease to comply with ordinances of the City and "valid orders * * * of the municipal authorities" as to the practice of chiropractic, required him to seek official authority to continue the use of the office. See *Friedman Realty Co. v. De Stefan,* 222 N. Y. S. 371. It is clear from the record that the Mosers were entirely willing to do anything that was required to establish the validity of the use of the leased premises as a professional office. On advice of counsel that this was the preferred strategy, they sought the passage of an ordinance which would rezone the block, and testified that they were entirely willing to seek a variance or the establishment of a non-conforming use. Not only does the evidence not show that Dr. McNally or the Mosers, singly or together, could not have secured a variance or a special exception to continue the challenged use or could not have established that a non-conforming use existed at the date of the 1953 ordinance, but rather, it permits an inference that any of these results might have been accomplished.

We think that Dr. McNally, having brought about the challenge to the use so that he could escape his responsibilities under the lease, could not stand idly by and, because of a notice to that effect from an administrative official, gladly accept as a fact that his use of the office was illegal. Before he can say that the use of the premises as professional offices by him was impossible, he was under an obligation, either on his own or through the Mosers, who were willing to act to attempt to establish a right to continue that use, or at least to wait until impossibility became a fact, not merely a possibility.

One may not rely on illegality or invalidity where the doing of that said to be forbidden may reasonably be made legal and possible through administrative or judicial action. In *Shedlinsky v. Budweiser Brewing Co.* (N. Y.), 57 N. E. 620, *supra,* there was a lease of premises exclusively for a saloon. The defense was that a school was within two hundred feet so that no such use was possible and the lease illegal and void. The Court said: "A lease, valid, as this was, upon its face, is not to be condemned as unlawful, and therefore an unenforceable instrument, because the purpose for which the demised premises were to be used might, under certain circumstances, be within the prohibition of a statute. When the operation of the prohibition depends upon the proof, and that is inconclusive upon the subject, then the obligation of the parties remains unaffected. * * * Here, as suggested below, it was not shown, and the evidence did not tend to show, that the lessor intended that the statute should be violated, or that no license ever could possibly be obtained by the lessee." In *Say-Phil Realty Corp. v. De Lignemare,* 228 N. Y. S. 365, there was a lease for premises in a residence district for use as a drug store. The Court held that the lease for a use prohibited by the zoning law, was not necessarily impossible of performance where it appeared that the board of appeals had authority to vary the zoning law and the tenant an obligation to seek such a variance. In *Stockburger v. Dolan,* Sup. Ct. of Calif., 94 P. 2d 33, it was held that a lease for the drilling of oil on land in a residential area was not illegal where it was possible to obtain a permit. See also *Adamsky v. Mendes* (Mass.), 96 N. E. 2d 236; *Strauss v. Boris* (Ill. App.), 89 N. E. 2d 862. In *Levy v. Rosen* (Ill. App.), 21 N. E. 2d 653, an alien agreed to buy a stock exchange seat. The rules of the exchange did not permit an alien to hold such a seat. The alien was unsuccessful in his claim that the contract was illegal or impossible of performance for this reason. The Court held that it was not, because the stock exchange had on previous occasions admitted aliens and its constitution could have been amended. *Standard Brewing Co. v. Weil,* 129 Md. 487; *Heaver v. Lanahan,* 74 Md. 493; *Beebe v. Johnson* (N. Y.), 19 Wend. 500; *61-69*

*Pierrepont St., Inc. v. Feist,* 124 N. J. L. 412; *Palmer v. Chamberlin* (C. A. 5th), 191 F. 2d 532, *supra;* and *Bryan v. Pasadena Holding Co.* (Calif. App.), 35 P. 2d 334, (the last two having been cited above) lend support to this view. Compare *Duff v. Trenton Beverage Co.* (N. J.), 73 A. 2d 578, where the administrative officials could not in law act to correct or waive the illegality; and *Anglo-Russian Merchant Traders & John Batt & Co.,* 2 K. B. (1917) 679; *Wischhusen v. Spirits Co.,* 163 Md. 565, *supra,* where it was shown that the official permits could not be secured.

There is real support for the view that had Dr. McNally continued in possession and use of the offices he had rented, his right to do so during the whole term of the lease might well have been established. Several months after the decision in the case before us, Judge Manley, sitting in the Baltimore City Court, decided the *Jones-Beck* and *Tillman* cases, the joint opinion being reported in the Daily Record of January 30, 1956. He held that the Baltimore zoning ordinances in effect prior to 1953 did not, as the City maintained, "inferentially", or otherwise, prohibit the use of offices in residences by non-resident doctors. Judge Manley concluded, therefore, that the use of their respective offices by Dr. Beck and Dr. Tillman was lawful at the effective date of the 1953 ordinance and that there existed as of that date a nonconforming use which, under the decisions of this Court—see *Higgins v. Baltimore,* 206 Md. 89—would permit the doctors to continue to use the offices despite the prohibitions of the new ordinance. The City seemingly acquiesced in the effect of the decisions in these two cases. At least, it did not appeal. Although we are not here passing on the correctness of Judge Manley's holdings, in view of their far-reaching consequences it is hardly to be conceived that the City would not have appealed if it had not been willing to have the law as Judge Manley held it to be, generally operative.

The appellants urge that apart from other considerations, the notice of March 2, 1955, received from the zoning enforcement officer, amounted to a constructive eviction of them by the Mosers. We find no substance in this contention. The general rule is that to constitute constructive eviction the act

complained of must have been done by the landlord or by his procurement with the intent and effect of depriving the tenant of the use and enjoyment of the leased premises. *Standard Brewing Co. v. Weil*, 129 Md. 487. Here the tenant, and not the landlords, induced the public officials to send the notice. The Court, in the *Standard Brewing Co.* case, adopted the statement of the leading case of *Taylor v. Finnigan*, 189 Mass. 568, 76 N. E. 203, that enforcement by public officers of restrictions as to leased premises does not amount to an eviction suspending liability to pay rent and noted that the Massachusetts Court said that this rule was uniformly supported by other adjudications on the subject. It is to be noted, too, that Dr. McNally, in response to his inquiry, was first notified in November, 1954, that the zoning enforcement office thought his use of the premises to be prohibited by the 1953 ordinance, and received a second notice on March 2, 1955. He did not move until October 1, 1955—some seven months after receipt of the last notice and almost a year after the first notice. If a tenant is to successfully assert constructive eviction, he must have abandoned the premises as a result of the act relied on and he must have done so within a reasonable time. The cases collected in the annotation in 75 *A. L. R.* 1114 suggest that abandonment within a month is a reasonable time, but abandonment after a month has been held not to be within a reasonable time. See *Automobile Supply Co. v. Scene-in-Action Corp.* (Ill.), 172 N. E. 35. We think that appellant failed to show any of the requirements necessary to support constructive eviction.

Finally, appellants say that declaratory relief is not appropriate in this case and that if it were, the money judgment should not have been granted. They urge that there is a duty upon the landlord to re-let the premises and mitigate damages.

We think that declaratory relief was entirely appropriate. When the action was filed, the appellants were taking the position that the lease, properly construed, did not extend beyond the initial four year period, and the appellees said it was for a ten year term. When appellants pleaded, they challenged the validity and effectiveness of the lease by virtue of the claimed illegality. An actual controversy existed both

at the time of the institution of the suit and the time it was at issue. The declaratory procedure was entirely appropriate to settle either or both matters in controversy. *Borchard, Declaratory Judgment,* 2nd Ed., p. 951, 956. It has been held that a landlord may sue in a declaratory proceeding to establish the invalidity of the lessee's notice to terminate. *Simons v. Associated Furnishers, Ltd.,* 1 Ch. 379 (1931); *Murray Motor Co. v. Overby* (Ky.), 289 S. W. 307. See also *Borchard, ibid.,* p. 603. The granting of the judgment for the rent due and unpaid at the time of the decision was proper. Although its granting was not prayed in the original petition, further relief may be granted by the court either on the original petition for declaratory relief or on a subsequent motion. *Borchard, ibid.,* pp. 430, 431; *Turner v. Manufacturers' Cas. Ins. Co.,* 206 Md. 601.

It is generally held that a landlord, where a tenant has vacated the leased premises, is under no duty to seek a new tenant but may let the premises lie idle and recover the rent without taking steps to lessen the damages. See cases collected in the annotations in 40 *A. L. R.* 190 and 126 *A. L. R.* 1219. It is stated in the first annotation that in all but two jurisdictions the courts have adopted this view. This Court seems to have agreed. See *Adreon v. Hawkins,* 4 Harris & J. 319; *Oldewurtel v. Wiesenfeld,* 97 Md. 165, 176; *Biggs v. Stueler,* 93 Md. 100-111; and *Gomprecht v. Dunleer Co.,* 164 Md. 653, 659.

The appellees filed a motion to dismiss the appeal based on the claim that the appeal was not taken within thirty days of judgment. The record shows that it was and the motion is denied.

The appellants have moved this Court to withhold the costs of printing the opinion of Judge Manley in the *Jones-Beck* and *Tillman* cases as the appendix to the appellees' brief. We think that the printing of the opinion of Judge Manley was proper in that it had an important bearing on this case and facilitated its consideration and decision by the Court. For the appellees to have printed it in their brief, in whole or in part as the appellants suggest they should have done, would

have made the brief cumbersome and unsymmetrical. The motion to withhold costs is denied.

We find no error in the proceedings or in the judgment appealed from.

*Judgment affirmed, with costs.*