Argued September 8, affirmed October 5, 1960

MAKI ᴇᴛ ᴜx *v.* NIKULA ᴇᴛ ᴀʟ

355 P. 2d 770

*Robert C. Anderson,* Astoria, argued the cause for appellants. On the briefs were Anderson & Edison and Larry J. Anderson, Astoria.

*Robert C. Macdonald* and *Lawrence M. Dean,* Astoria, argued the cause for respondents. With Lawrence M. Dean on the brief were Norblad, Wyatt & Macdonald, Astoria.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and King, Justices.

KING, J. (Pro Tempore)

This was an action filed by the plaintiffs against the defendants for unpaid rental accruing on a lease after the premises were vacated by the defendants. The answer, among other things, alleged constructive eviction.

Trial was had before a jury which returned a verdict for the defendants. Plaintiffs moved for judgment notwithstanding the verdict, which motion was granted and judgment entered accordingly.

This appeal is by the defendants from that judgment notwithstanding the verdict.

On September 4, 1953, a written lease attached to the complaint as exhibit A was executed whereby the defendants leased from the plaintiffs a portion of certain premises known as the Maki Building, Astoria, Oregon, particularly described as:

"* * * namely the S. W. portion of said building, which is approximately 36′ wide and 50′ deep, as now partitioned and including balcony above office area * * *."

The lease was for a five-year term, and so far as we are concerned, provided for a rental of $175 per month, payable monthly.

The room was used by the defendants for the operation of their printing business and had been selected by them because it contained proper space for an economical flow of their work and was particularly fitted for their heavy machinery and equipment and for unloading their supplies of paper. It was also selected because of the health of Mr. Nikula.

Easterly of the room leased there was a covered alleyway extending north and south through the Maki

Building. A doorway approximately 10 feet wide opened from the leased room to the alleyway. This alleyway was used by the defendants to move their equipment into the leased premises and for the unloading of some of their supplies. They also used the doorway to go to the furnace and to reach their premises after parking their cars under the covered alley during inclement weather. Customers sometimes used the entrance also, although there was a front entrance from their printing establishment into Marine Drive, a business street in downtown Astoria.

In January, 1955, the plaintiffs leased the westerly part of the covered alleyway immediately east of the defendants' room to a dry-cleaning establishment and caused a wall to be erected near the center of the alley, running north and south, which blocked the defendants' means of ingress and egress through the door on the easterly side of their room.

About 26 months after the door was blocked, the defendants moved from the premises and refused to pay rent after that date.

The defendants on their appeal from the judgment n.o.v. raise two assignments of error, namely: (1) The court erred in granting the plaintiffs' motion for a judgment notwithstanding the verdict, and (2) the court erred in its ruling out of the presence of the jury on defendants' offer of proof regarding the furnace as follows * * *.

We believe that the real questions to be determined here are: (1) Was there sufficient proof of constructive eviction, and (2) if there was constructive eviction, did the defendants move promptly and take advantage of it? Each of these elements must be proved in this case to establish constructive eviction.

32 Am Jur 231, Landlord and Tenant § 246, provides:

> "It is now well established that any disturbance of the tenant's possession by the landlord, or someone acting under his authority, which renders the premises unfit for occupancy for the purposes for which they were demised or which deprives the tenant of the beneficial enjoyment of the premises, causing him to abandon them, amounts to a constructive eviction, provided the tenant abandons the premises within a reasonable time.
>
> "The test as to when an act complained of generally constitutes an actual, partial, and when a constructive, eviction is whether the act results in a deprivation of some right or appurtenance to the premises to which the tenant was entitled or whether it constitutes merely an interference with the beneficial enjoyment of the premises by the tenant. Acts of the former kind constitute an actual eviction, while those of the latter kind constitute a constructive eviction."

■ It is a general rule that the interference with the tenant's enjoyment of the demised premises must be of a substantial nature in order to constitute constructive eviction. *Barry v. Frankini,* 287 Mass 196, 191 NE 651; *Cline v. Altose,* 158 Wash 119, 290 P 809.

> "To constitute constructive eviction, the lessee (1) must be deprived of a substantial part of the leased premises, (2) and must elect to surrender possession (*Tregoning v. Reynolds,* 136 Cal App 154 (28 P2d 79)) * * *." *Bakersfield Laundry Assn. v. Rubin,* 131 Cal App2d 862, 280 P2d 921.

The case of *Hotel Marion Co. v. Waters,* 77 Or 426, 150 P 865, has been cited frequently by both parties. The Hotel Marion Co. case differs materially from the present case. In that case the lease itself provided for an archway between the demised pool-

room and the barroom operated by the hotel company. Later that archway was closed, and the jury apparently found that such closure constituted constructive eviction.

■ In the case at bar the lease, exhibit A attached to the complaint, does not specifically mention the wide doors on the east side of the demised premises. Likewise, the lease does not mention the covered alleyway and does not give the defendants any rights to use the alley.

There was testimony that the entire premises, including the doorway and the covered alleyway, were shown to the defendants before the leasing. There was a conflict in the testimony regarding the attempted leasing of the alleyway to the defendants and to others. The defendants were allowed the use of the alleyway for several months, without objection from the plaintiffs.

Without setting out in detail the testimony, we are of the opinion that a jury question was raised regarding the use, benefit and enjoyment of the east door and the appurtenant alleyway and likewise whether the interference with the use and enjoyment was substantial. We are not determining the weight of the evidence, but merely that a sufficient question of fact was raised on that point to go to the jury. If that were the only point involved, the jury's verdict would have to stand.

■ As mentioned before, in order to take advantage of constructive eviction, the tenant must act promptly and without unreasonable delay.

52 CJS 174, Landlord and Tenant § 457, says:

"The abandonment of the demised premises by the tenant which is essential to a constructive evic-

tion may and must take place within a reasonable time."

*Fitts v. Hanks et ux.,* 209 Or 1, 303 P2d 220; *Bakersfield Laundry Assn. v. Rubin,* supra; *Bolding v. Clanton* (Okla), 285 P2d 213.

■ It is true that the reasonable promptness of the abandonment of the premises is a question of fact and is usually a jury question.

However, where there is no dispute regarding the facts, the reasonable promptness of vacating the demised premises becomes a question of law for the court's decision.

■ In this case there was no dispute nor contradictory testimony on the question of time of vacating. The answer alleges and all the testimony shows that two years and two months, or 26 months, elapsed between the closing of the door and the vacating of the premises by the defendants.

The defendants attempted to justify and explain this long delay in vacating the demised premises by their inability to secure another satisfactory location. We think that the testimony fails completely to show due diligence in securing another location and that defendants' own testimony shows that they did not vacate the premises promptly or with reasonable promptness.

Mr. Nikula, one of the defendants, testified on direct examination that a week or more after the alley was walled off in late January or early February, 1955, he talked with Mr. Maki as follows:

"Q All right. And what was said.

"A We told Mr. Maki. I say 'we'; Bob and I were both there. That we did not appreciate hav-

ing this doorway blocked off and we felt that there should be a reduction in our rental because of that.
"* * * * *

"Q Now [I] ask you this, Mr. Nikula, since this constructive eviction as we call it in January or February of 1955 by the 'E and E' Cleaners coming in there why did you stay there almost two years or about two years?

"A We, at the time when Mr. Maki came in to talk to us, we discussed the fact that we wanted a reduction in rental; he was going to discuss it with Mrs. Maki. Then a period of two or three months probably elapsed and finally Mrs. Maki, some time during that summer, told us that she and Arvid had discussed this and they would not agree to any reduction in rental. This was probably in either June or July of 1955. * * *
"* * * * *

"Q How soon did you start looking for a place after you had this discussion with Mrs. Maki in 1955?

"A I would say we started the next month; as soon as we heard of something we would run it down."

Mr. Nikula then testified that he located their present quarters in December, 1956, but didn't vacate the plaintiffs' premises until March, 1957. He makes absolutely no explanation of the delay in moving from December, 1956, to March, 1957. The testimony of Mr. Grant, the other defendant, was even less satisfactory in explaining the long delay in vacating.

No cases have been cited us, and we have found none, that countenanced such a long delay in vacating after claimed constructive eviction.

The defendant Nikula's testimony of efforts made to secure new quarters showed that those efforts were not prompt and energetic enough to justify such a

long delay. *Tregoning v. Reynolds,* supra; *Bakersfield Laundry Assn. v. Rubin,* supra; *J. C. Penny Co. v. Birrell,* 95 Colo 59, 32 P2d 805; *Giddings v. Williams,* 336 Ill 482, 168 NE 514; *Palumbo v. Olympia Theatres, Inc.,* 276 Mass 84, 176 NE 815; *Stone v. Sullivan,* 300 Mass 450, 15 NE2d 476, 116 ALR 1223; *McNally v. Moser,* 210 Md 127, 122 A2d 555.

■ Defendants' second assignment of error is not well taken. The lower court clearly ruled that the evidence regarding the furnace as suggested by defendants' counsel would be admissible, but that no such evidence had been presented. Even after that ruling it was not presented nor tendered as a proper offer of proof. The lower court did suggest that if such testimony of alleged defective condition of the furnace were put on that he would probably have to take it away from the jury, because the first knowledge of it was apparently 42 months before the final moving out. No actual attempt was made to introduce the testimony by the defendants. *Columbia R. I. Co. v. Alameda L. Co.,* 87 Or 277, 168 P 64, 440.

The lower court was correct in granting the judgment notwithstanding the verdict. There was no question as to the amount of the judgment rendered, as the jury had been instructed without objection to return a verdict for $1,480 if they found for the plaintiff.

The judgment is affirmed.