PETER KING *et al. vs.* KING-MCLEOD-FRASER, INC.

PETER KING *et al. vs.* KING-MCLEOD-FRASER, INC.

MAY 27, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

CONDON, C. J. These are two actions of assumpsit for breaches of a covenant in a lease to pay rent in accordance with the terms thereof. They were tried together before a justice of the superior court without a jury who in each case rendered a decision for the plaintiffs. Each case is here on the defendant's bill of exceptions containing an exception thereto. Its other exceptions being neither briefed nor argued are deemed to be waived.

The plaintiffs are the owners of a building located at 225-227 Thames street in the city of Newport. On August 5, 1955 they leased the building to James J. O. Stone for a term of 10 years with the privilege of assigning the lease to a corporation formed to purchase the business known as the "Boston Store" conducted on the premises by the lessors. In accordance with such privilege the lease was duly assigned to respondent corporation. Under the provisions of the lease the rent per annum was fixed at $10,500 payable in equal monthly installments of $875 in advance on the first business day of each month with the proviso, however, that when and if the business of the store grossed in any year $300,000 the rent was thereafter to be increased to $12,000 payable in equal monthly installments of $1,000

in the manner hereinbefore mentioned. The lessee went into possession in September 1955 and for the year ending September 1956 its business exceeded $300,000 so that thereafter it was obligated to pay monthly installments of $1,000. Until March 31, 1961 it made such payments, at which date it attempted to surrender the leased premises and refused to pay any rent from April 1, 1961 to and including January 1962 on the ground that it had been constructively evicted by reason of the premises becoming untenantable due to the lessors' neglect to keep the exterior thereof in repair.

The first action, Ex. No. 10,622, is for the installment of rent due for April 1961 in the sum of $1,000 less such sum as may be due to the lessee for the cost of heating fuel paid by it in accordance with a provision therefor in the lease. The second action, Ex. No. 10,623, is for nine unpaid installments of rent due for May 1961 to January 1962, inclusive, less the amount expended in any month by defendant for fuel in the heating of the demised premises.

At the trial in the superior court after plaintiffs had established defendant's obligation to pay the rent provided in the lease and its failure to perform such obligation, the defendant presented evidence intended to prove the allegations in its several pleas: first, that plaintiffs suffered the exterior of the leased premises to remain in such disrepair as to make them untenantable; second, that they failed to maintain the heating system, hot water and electric wiring systems as a result of which neglect defendant was forced to vacate the premises; third, that by reason of the above breaches of the lease by the lessors defendant was unable to obtain insurance against loss by water to its stock of merchandise and equipment.

Such defenses defendant sought to establish by the testimony of eight witnesses and certain documentary evidence, consisting of photographs of water-damaged portions of the demised premises, correspondence with plaintiff Peter

King concerning the loss by defendant of "all risk" type of insurance on its property on the demised premises, and further correspondence pertaining to the same matter by way of notice to plaintiffs of its reason for vacating the premises on March 31, 1961.

The trial opened on September 11, 1963 and ended on September 18. At its conclusion the trial justice reserved decision and allowed the parties three weeks within which to file memoranda of law applicable to the facts developed at the trial. Thereafter on November 8, 1963 the trial justice filed a rescript in which she reviewed the evidence at length and pointed out specifically wherein defendant fell short of establishing the allegations in its pleas as a defense to its default of the obligation to pay the rent as provided in the lease.

She referred in particular to the evidence "whether produced by the plaintiffs or the defendant" and found "as a fact that the landlord did not breach the covenant to repair." Indeed she went much further and positively found on evidence which she characterizes as "credible, convincing and of probative value that the landlord conscientiously sought to keep the covenant by making the repairs as requested or paying for the repairs after they had been ordered by the tenant." On the question of whether the lessors *intended* to deprive the lessee of the use and enjoyment of the demised premises she expressly found no evidence in support thereof but on the contrary convincing and credible evidence that they were making an effort to keep the covenant to repair even up to the time when defendant sought to abandon the premises.

In our opinion the rescript represents a careful and thorough consideration of all the evidence in the case. But defendant nevertheless contends that it is erroneous in three important particulars and these are the subject of the exception to the trial justice's decision which it has briefed and argued here. First, it contends that she erred in

weighing the evidence as to whether plaintiffs breached their covenant to repair and thus permitted the premises to become untenantable. It claims that the fair preponderance is clearly the other way in its favor. Second, it contends that it was not necessary to prove an intention to evict on the part of plaintiffs. Third, that in any event she erred at least in not allowing as a setoff in Ex. No. 10,623 an amount equal to the estimated cost of heating the premises from May 1961 to January 1962.

With regard to the first contention we deem it unnecessary to discuss the evidence. Suffice it to say that we agree with the trial justice's conclusion. After a careful perusal of the transcript we are unable to find any reasonable basis for holding that she erred in weighing the evidence. Moreover in considering this contention we must hold defendant to the duty of showing that the trial justice was clearly wrong in her judgment of the evidence. This is in accordance with our well-established rule that where the parties submit their case to the trial justice on the law and the facts his findings of fact on conflicting evidence will not on review by this court be disturbed unless they are clearly wrong. *Gettler* v. *Caffier*, 92 R. I. 19, 165 A.2d 730. We are of the opinion that defendant in the cases at bar has failed to discharge this duty.

The defendant's second contention is in our opinion not supported by the authorities. The trial justice did not err in holding that defendant in order to prevail on its defense of constructive eviction must prove that it was the intention of the lessors by their alleged breach of the covenant to repair to deprive it of the beneficial enjoyment of the demised premises. It was clearly so indicated many years ago by dicta in *Miller* v. *Maguire*, 18 R. I. 770, 772, where the court declared: "And, in order to constitute an eviction which will operate either to annul the lease, or as a suspension of rent, the act complained of must have been done by the landlord, or by his procurement, with the intention

and effect of depriving the lessee of the use and enjoyment of the demised premises in whole or in part." *McCardell* v. *Williams*, 19 R. I. 701, decided by the court with substantially the same personnel as sat on the *Miller* case, is not in our opinion contrary thereto although defendant apparently thinks it is. In *McCardell* the court did not mention *Miller* and in our opinion there was no necessity for doing so because in the circumstances in which *McCardell* came before it the principle of constructive eviction was not in controversy and the general language which it used and upon which defendant relies was sufficient for the purpose of its decision.

The weight of authority elsewhere supports the view stated in *Miller*. It is well expressed in 32 Am. Jur., Landlord and Tenant, §249, p. 234, as follows: "Generally, in order that a tenant may be able to claim an eviction because of some act of the landlord which interferes with the tenant's enjoyment of the premises, it must appear to have been the intention of the landlord, in doing the act alleged to constitute an eviction, to deprive the tenant of his possession or permanently to interfere with his beneficial use or enjoyment of the whole or a part of the premises. The mere act or default on the part of the landlord which renders the premises uninhabitable or untenantable is not sufficient if that act or default is not accompanied by an intention on the part of the landlord to affect the enjoyment of the premises demised * * *."

In any event, in view of the findings of fact made by the trial justice which we have hereinabove refused to disturb because defendant has not shown them to be clearly wrong, this principle of law is not of decisive importance in the case at bar. The trial justice expressly found that the lessors had not breached the covenant to repair but on the contrary had done and were doing everything necessary to be done to cure the defects in the premises complained of within a reasonable time after receiving notice of such

232

complaints. And she further found that the evidence failed to show that the demised premises were untenantable and the true cause of defendant's abandonment thereof. Consequently, in the absence of proof that the lessors had breached their covenant to repair, the question of their intention does not arise. However, the trial justice quite properly passed upon it in the event that on appeal it could become relevant if this court disagreed with her findings of fact as to plaintiffs' breach of the covenant to repair.

The defendant's third contention is clearly without merit. The trial justice did not err in overruling its plea of setoff in Ex. No. 10,623 and deciding that the plaintiffs were entitled to the full amount of the unpaid rent for May 1961 through January 1962. There was no evidence that the defendant had expended any amount in those months for fuel in the heating of the demised premises. Under the provisions of the lease in the absence of such expenditure the defendant had no standing for its claim of setoff based merely on an *estimate* of what such cost would have been. There is here no question of unjust enrichment to the plaintiffs as a result of holding the defendant to the language of the lease. And the rule of damages in *Hadley* v. *Baxendale*, 9 Exch. 353, cited in *Greene* v. *Creighton*, 7 R. I. 1, is of no application in the circumstances here. The diminution of the rent expressly provided and specifically described in the lease is not in the nature of damages but a reimbursement to the defendant for *actual* expenditures only in heating the demised premises. Where there were no such expenditures there could be no reasonable basis for setoff consistently with the language of the lease.

In each case the defendant's exception is overruled, and each case is remitted to the superior court for entry of judgment on the decision.

*Corcoran, Peckham & Hayes, William W. Corcoran,* for plaintiffs.

*Moore, Virgadamo, Boyle & Lynch, Salvatore L. Virgadamo,* for defendant.