249 A.2d 418.

FREDERICK REALTY CORPORATION *vs.* GENERAL OIL CO., INC.

JANUARY 16, 1969.

PRESENT: Roberts, C. J., Powers, Joslin and Kelleher, JJ.

KELLEHER, J.  On December 9, 1964, the parties to this appeal entered into a lease of the plaintiff's real estate for a period of five years.  On June 9, 1966, the defendant vacated the premises and thereafter the plaintiff instituted this action for damages resulting from the defendant's leaving the property prior to the termination date set forth in the lease.  The defendant filed a counterclaim in which it alleged constructive eviction as a defense to the plaintiff's suit.  Trial was held before a superior court justice sitting without a jury.  The trial justice found for the plaintiff and rejected the counterclaim.  After judgment was entered for the plaintiff in the amount of $7,239.41, the defendant appealed to this court.

The plaintiff owns a large parcel of land which is located in Providence on the northerly side of Harris Avenue.  Situated on this parcel in various buildings is a conglomerate of commercial endeavors such as a jewelry manufacturing plant, a welding shop, an automobile body repair shop and a gasoline service station having a bulk storage plant with a capacity for over 100,000 gallons of gasoline.  The defendant corporation specializes in the sale of gasoline to the motoring public at so-called cut-rate or discount prices.  Its retail outlets are located in various parts of Rhode Island.

The five-year lease executed in December 1964 related to that portion of plaintiff's land which contained the gas station and its bulk storage plant.  The bulk storage facility lies just to the rear of the gas station and consists of a number of underground tanks and a loading platform.  The defendant's attorney testified that his client's primary purpose in the lease was to obtain the use of the rather extensive storage capability of this location rather than the

operation of the gas station. The lease provided for an annual rental of $4,800 payable in monthly installments of $400 with each installment being due on the first business day of each month. The defendant took possession of the premises in December 1964 and in the words of plaintiff's treasurer, defendant paid the rent like "clock work." Shortly after the lease was executed, there arose a question as to the extent of the land area embraced by the lease. Officials of both parties met and measured off that portion thereof which was assigned for the use of defendant. As part of its automotive fleet, defendant owned several large tank-trailer trucks. A truck using the bulk plant would come onto the property from Harris Avenue, proceed up a driveway which ran in a northerly direction, make a U turn behind the gas station and drive to the loading dock. The defendant's vehicles would either pick up or discharge a cargo of gasoline. This driveway also provided access to and from the auto body shop which was located at the extreme northwesterly portion of plaintiff's parcel.

The defendant's attorney sent plaintiff a letter in which he stated that his client was terminating its tenancy because cars belonging to one of plaintiff's other tenants had blocked the driveway and made it impossible for one of its trucks to enter the bulk-plant area. This action, he stated, amounted to a constructive eviction and plaintiff was advised that defendant would quit the premises. The plaintiff thereupon notified the attorney that it still considered the December 1964 lease to be in full force and effect. On June 9, 1966, defendant abandoned the Harris Avenue location and delivered the keys of the establishment to plaintiff.

The record shows that the source of irritation between an otherwise harmonious relationship was certain incidents where automobiles under the control of the body-shop operator were parked in such a manner as to prevent defend-

ant's large trailer trucks from making the turn at the rear of the gas station and proceeding to the loading platform. It was conceded that the first time this occurred, plaintiff was notified and it took the necessary measures to insure that the cars were moved and the truck proceeded on its way.

The single issue before us is whether or not the trial justice erred in finding that defendant's complaints did not amount to a constructive eviction which would excuse it from performing its covenants under the lease. A review of the record shows that the trial court's action was eminently correct.

We have addressed ourselves to the law of constructive eviction in *King* v. *King-McLeod-Fraser, Inc.,* 98 R. I. 226, 200 A.2d 705, and *Miller* v. *Maguire,* 18 R. I. 770, 30 A. 966. In those cases we enunciated the rule that in order for a tenant to prevail on his defense of a constructive eviction, he must show that actions performed by the landlord or someone acting in his behalf were done with the intent of depriving the tenant of the use and enjoyment of the demised premises either in whole or part. It is also a general rule that in order that there be a constructive eviction, the landlord's interference with his tenant's use of the property must be of a substantial nature. *Barry* v. *Frankini,* 287 Mass. 196, 191 N. E. 651; *Maki* v. *Nikula,* 224 Ore. 180, 355 P.2d 770; 2 Powell, *Law of Real Property,* §227, p. 203. In *Miller* v. *Maguire, supra,* this court alluded to the last-stated principle when it referred to the case of *Upton* v. *Townsend,* 17 C.B. 30, wherein it was held that an eviction contemplated action by a landlord which was "something of a grave and permanent character" and not a "mere trespass."

Having these principles in mind, it is obvious that defendant's effort at sustaining his burden of proof was quite insufficient. There was no evidence to show that the ac-

tions of the operator of the auto body shop were in any way authorized or countenanced by plaintiff. Neither defendant's general manager nor its attorney ever complained to the lessor about the cars on the driveway. However, even if we, as the trial justice did, assume arguendo that the landlord was responsible for his tenant's actions, the two acts of interference were properly classified by the trial justice as a mere temporary inconvenience which could have been straightened out with a phone call to plaintiff. The record is devoid of any evidence which would warrant an inference that plaintiff intended to deprive defendant of the use and enjoyment of the leased property.

While defendant in his appeal lays great emphasis on an exhibit in the form of a movie wherein a number of cars are shown to be parked in the driveway leading to the bulk plant, it is uncontradicted that defendant's witnesses described but two occasions when any car parked in this way impeded the progress of its trucks. The two minor annoyances described by defendant's witnesses cannot be used as an escape hatch whereby defendant can be freed of its obligations under the lease.

Had defendant sought to insure a continuous and unimpeded access to the loading area, it could have insisted on having in the lease a provision whereby any interference with its use of the Harris Avenue property would be deemed to be such a breach of the covenant of quiet enjoyment as would terminate the lease and discharge the lessee from any further liability. The instant lease, of course, contains no such provision.

The trial justice's decision was in accord with the law. It finds support in the evidence. It shall be sustained.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remanded to the superior court.

PAOLINO, J., did not participate.

*John P. Bourcier,* for plaintiff-appellee.

*John A. Varone, Richard Linn,* for defendant-appellant.