691 A.2d 1336

**CUSTER ENVIRONMENTAL, INC.**

v.

**9305 OLD GEORGETOWN ROAD PARTNERSHIP et al.**

No. 51, Sept. Term, 1996.

Court of Appeals of Maryland.

April 10, 1997

Stanley R. Jacobs, Rockville, for appellant.

Martin Trpis (Ashcraft & Gerel, on brief), Washington, DC, for appellees.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

RODOWSKY, Judge.

This landlord-tenant case involves entitlement to rents paid into a court registry escrow fund during the tenant's occupancy for a use that violated the property's existing zoning.

The landlord is the appellee, 9305 Old Georgetown Road Partnership (Partnership). The tenant is the appellant, Custer Environmental, Inc. (Custer). The demised premises are

the terrace level and first floor of a building at 9305 Old Georgetown Road in Bethesda. That location is in an R–60 zone (residential, one-family) under the Zoning Ordinance of Montgomery County, Maryland. Following the expiration in January 1991 of the one-year term under a prior lease between the parties, and following a period of month-to-month tenancy, the parties entered into two new leases, each for the term of one year commencing April 1, 1993. The rent under the lease for the first floor was $1,355 per month, and the rent for the terrace level was $995 per month. Paragraph 3 of each lease, entitled "USE," stated that "[l]essee will use and occupy the Demised Premises for office and commercial purposes."

On February 2, 1994, an inspector from the Montgomery County Department of Environmental Protection served Custer with a notice of a zoning violation, described as "operating a general business in the R–60 zone."

Custer reacted by stopping its rent payments. On March 16, 1994, the Partnership filed two actions for summary eviction against Custer in the District Court of Maryland, sitting in Montgomery County. The actions sought unpaid rent and repossession of the premises under Maryland Code (1974, 1996 Repl.Vol.), § 8–401 of the Real Property Article (RP). Trial was set for March 30, 1994, at which time Custer prayed a jury trial.

Custer's demand for jury trial triggered the operation of RP § 8–118. In relevant part that statute provides:

"(a) . . . In an action under § 8–401 . . . of this article in which a party prays a jury trial, the District Court shall enter an order directing the tenant . . . to pay all rents as they come due during the pendency of the action, as prescribed in subsection (b) of this section.

"(b) . . . The District Court shall order that the rents be paid into the registry of an escrow account of:

"(1) The clerk of the circuit court[.]

. . . .

"(d) ... Upon final disposition of the action, the circuit court shall order distribution of the rent escrow account in accordance with the judgment. If no judgment is entered, the circuit court shall order distribution to the party entitled to the rent escrow account after hearing."

After the two summary eviction cases had been transferred to the Circuit Court for Montgomery County, Custer there instituted a third action (Civil # 118368) against the Partnership and three of its partners as a non-jury action. The complaint in Civil # 118368 alleged that the defendants had misrepresented the zoning status of the property by failing to disclose that it could not be used for offices and commercial purposes and, alternatively, by affirmatively misrepresenting the zoning. The defendants answered and filed a counterclaim, together with a jury trial demand. The counterclaim alleged a breach of the lease contract, interference with the Partnership's advantageous relationship with the holder of the mortgage on the premises, and constructive fraud by virtue of Custer's agent or attorney's having failed to change the "USE" provision of the lease, as the parties allegedly had agreed to do in negotiations. Custer's answer to the counterclaim raised, *inter alia,* a defense of illegality of the contract sued upon.

Custer vacated the premises in mid-July 1994 and ceased paying rent into the court registry. By an order entered in September 1994, the circuit court ordered Custer to pay into the registry funds equal to the rent for July, August, and September of 1994 and the rent for October, prorated through the fourteenth day of that month. That order also consolidated the three cases for trial.

Trial was had before a jury for five days ending September 11, 1995. The court submitted the case to the jury on three special issues. The jury's answers to the first two issues made it unnecessary to consider the third issue concerning damages. The verdict sheet reads:

"1.  Are the leases in question
        legal ____        OR illegal  ✓

"2.  If illegal is either party entitled to
recover (because the contract appeared to
be legal and was illegal because of some-
thing only the other party knew)
        Yes ____                No  ✓ "

Immediately after the jury had been discharged, the court heard from counsel concerning the disposition of the funds in escrow.  The court ruled that the Partnership should be paid from the escrow funds an amount equal to the rent for the premises up to the date when Custer vacated in July 1994, less the amount of the security deposit which the Partnership was holding, independently of the escrow, and which the Partnership would retain under the ruling.  The balance of the escrow was to be paid to Custer.

Custer noted an appeal in all three cases.[1]  Custer contends that, because the lease was found to be illegal, the Partnership is not entitled to any of the escrowed rent.  Prior to consideration of the matter by the Court of Special Appeals, we issued the writ of certiorari on our own motion in order to consider the effect of the claimed illegality and, as part of that analysis, to discern how determining whether a contract was illegal could be a jury issue.

Unfortunately, the record in this case leaves many unanswered questions.  The trial testimony and proceedings have not been transcribed.  Particularly noteworthy is the absence from the original record of the court's charge to the jury that underlies the special verdicts.  The principal portion of the

---

1.  The order distributing the escrow is written, filed in the case files, and noted on the consolidated docket entries.  It constitutes a final judgment in the two summary eviction actions, inasmuch as the order shows on its face that the issue of entitlement to possession had become moot and the order terminates the Partnership's claim for rent. Whether a final judgment has ever been entered in Civil # 118368 does not affect the finality of the judgments in the two summary eviction actions in which the escrow was created.  *See Yarema v. Exxon Corp.*, 305 Md. 219, 503 A.2d 239 (1986).

proceedings that has been transcribed is the argument of counsel concerning the disposition of the escrowed funds.

The essence of Custer's position is that the jury's conclusion that the leases were illegal means that they are unenforceable. If no escrow had been created Custer concludes that the landlord would not collect unpaid rent through judicial process and could not recover the rental value of the premises for the period during which the tenant occupied without paying rent. Custer submits that the circuit court should have approached distribution of the escrow as if it were the Partnership's suit for rent and, because of the illegality, directed payment of the entire fund to Custer.

Custer cites *Golt v. Phillips*, 308 Md. 1, 517 A.2d 328 (1986). Golt asserted the statutory cause of action created by the Consumer Protection Act. The claim alleged misrepresentation in the rental of consumer realty which was uninhabitable and which was unlicensed under a Baltimore City ordinance that required multiple family dwellings to be licensed. We held that, by way of damages under the statutory action, Golt was entitled to restitution of three months rent and to consequential damages, *i.e.,* moving expenses.[2] *Id.* at 13–14, 517 A.2d at 334.

Custer also relies on cases involving occupational licenses that are required for the protection of the public. Illustrative is *Harry Berenter, Inc. v. Berman*, 258 Md. 290, 265 A.2d 759 (1970), holding that an unlicensed home improvement contractor could not recover on the express contract or in *quantum meruit* for work done for a homeowner. *Golt* and the occupational licensing cases do not control the instant matter.

*McNally v. Moser*, 210 Md. 127, 122 A.2d 555 (1956), sets forth the Maryland law applicable to the alleged illegality of a lease based on a conflict between the contemplated use of the premises and the zoning law. *McNally* held that "[o]ne may not rely on illegality or invalidity where the doing of that said

---

2. *Golt v. Phillips* was further explained and distinguished in *Citaramanis v. Hallowell*, 328 Md. 142, 613 A.2d 964 (1992).

to be forbidden may reasonably be made legal and possible through administrative or judicial action." *Id.* at 138, 122 A.2d at 561. The tenant in *McNally,* a chiropractor, had leased a portion of residential premises for a ten-year term for use as professional offices. The tenant, however, lived elsewhere. In the third year of the lease the zoning ordinance was amended to prohibit, without a special exception, nonresident professional use of the property. When the tenant expressed an intent to abandon the remainder of the lease, the landlord obtained a declaratory judgment sustaining the validity of the lease. In affirming that judgment this Court, speaking through Judge Hammond, relied on cases in which the statute giving rise to the illegality argument had been in existence before the lease was executed, as well as on cases in which the statute was enacted during the term of the lease.

The *McNally* approach blends concepts of illegality with those of supervening impossibility of performance. For example, *McNally* cites *Say–Phil Realty Corp. v. De Lignemare,* 131 Misc. 827, 228 N.Y.S. 365 (1928), involving premises in a residentially zoned district that were leased for use as a drug store. "The court held that the lease for a use prohibited by the zoning law, was not necessarily impossible of performance where it appeared that the board of appeals had authority to vary the zoning law and the tenant an obligation to seek such a variance." *McNally,* 210 Md. at 138, 122 A.2d at 561. Further, *Stockburger v. Dolan,* 14 Cal.2d 313, 94 P.2d 33 (1939), "held that a lease for the drilling of oil on land in a residential area was not illegal where it was possible to obtain a permit." *McNally,* 210 Md. at 138, 122 A.2d at 561. The *McNally* Court also cited *Shedlinsky v. Budweiser Brewing Co.,* 163 N.Y. 437, 57 N.E. 620 (1900), where property located within 200 feet of a school was leased for use as a saloon. The lessee contended that the lease was illegal and void, but the court held that the tenant had not shown " 'that no license ever could possibly be obtained by the lessee.' " *McNally,* 210 Md. at 138, 122 A.2d at 561.

The rule of *McNally* was reiterated in *St. Luke's House, Inc. v. DiGiulian,* 274 Md. 317, 326–31, 336 A.2d 781, 786–89

(1975). *Compare Montagna v. Marston,* 24 Md.App. 354, 330 A.2d 502 (1975) (contract to purchase parcel in unrecorded subdivision enforceable by buyer despite ordinance prohibiting sales of lots in unapproved subdivisions where ordinance provided for enforcement by civil penalty against knowing violators and by injunction at the discretion of the county executive).

Numerous decisions, including *McNally,* from many jurisdictions are cited in 3 M.R. Friedman, *Friedman on Leases* § 27.302b, n. 1 (3d ed.1990), for the following statements:

> "A lease made for a purpose forbidden by law is enforceable if there is a legal possibility of validating the purpose by obtaining a license or permit or a variation under a governing zoning or other law. The tenant is therefore under an obligation to seek such validation and, if necessary, its renewal, and is liable under the terms of the lease, whether or not he succeeds. He may be liable, then, despite an inability to use the premises for his intended purpose."

*Id.* at 1391–92.

■ Under the applicable law, quoted above, the verdict sheet on which Custer relies does not, in and of itself, demonstrate that the circuit court erred in distributing part of the funds escrowed under RP § 8–118(d) to the Partnership. The verdict sheet reflects a finding that the "leases in question" are "illegal," but the record presented on this appeal does not inform us as to the meaning of the verdict under the court's instructions. Remarkably, the record does not clearly inform us of the nature of Custer's activity on the premises. The zoning inspector referred to it as "a general business" in the notice of violation. On the other hand, an exhibit introduced by the Partnership describes a conversation in April 1993 between Custer's owner and two women who were associated with a beauty salon operated on the second floor of the building at 9305 Old Georgetown Road. According to the exhibit, the owner of Custer said that, in order to comply with the zoning, "one of the professionals operating a business

there would have to live there." The inference from this exhibit is that Custer performed professional services, possibly environmental engineering. Under the Montgomery County Zoning Ordinance, Montgomery County Code (1994), § 59–C–1.31, a use described as "Offices, professional, nonresidential" is permitted in the R–60 zone under a special exception. Thus, in light of the *McNally* rule, the record presented to us in this case fails to show error by the circuit court.

■ There is a further reason why the circuit court did not err in its distribution of the escrow. Each of the two leases involved here contains the following provision:

"Should any provision of this Lease and/or its conditions be illegal or not enforceable under the laws of the State of Maryland it or they shall be considered severable, and the Lease and its conditions shall remain in force and be binding upon the parties as though the said provisions had never been included."

The jury found that neither party was "entitled to recover (because the contract appeared to be legal and was illegal because of something only the other party knew)." That verdict rejected Custer's claim that the Partnership had made misrepresentations to, or defrauded, Custer concerning the use of the property. Under those circumstances, the above-quoted provision from the leases, at a minimum, puts the risk on the tenant that the property may not lawfully be used for "office and commercial purposes." Although neither party referred to this provision in its brief, and the circuit court did not rely upon it, this lease provision is a ground plainly appearing upon the record that supports the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**