DECISION
This matter came on for a non-jury trial before the Court.[1]
Mr. Taylor did not appear for trial or contest the case at trial. Accordingly, a default entered against him for liability.
 Findings of Facts
In July 1969, Plaintiff, William Hopkins, entered into an indenture of lease agreement with Frank J. Andrews (Exhibit 1). The agreement provided Mr. Hopkins with access to a portion of property off of Victory Highway in Foster, Rhode Island, and allowed him to remove gravel, soil and other fill from the land. The agreement ran for 40 years, terminating in July 2009.
Mr. Hopkins kept a metal cable across the dirt road which provided him access to his portion of the property and kept others out. Mr. Hopkins regularly removed fill from the area and transported it to developing properties where it would be used for septic systems and *Page 2 
foundations. Although he used the gravel bank for most of the year, he ceased to remove gravel in about December, and left it dormant for a few months while the ground was frozen.
In the fall of 2003, Christopher Taylor and Kelly Taylor acquired ownership of the Foster property. Not only did they receive the property subject to the rights of Mr. Hopkins, but they were familiar with Mr. Hopkins rights, his ongoing use and how the gravel bank was operating. Shortly after they purchased the property, Mr. and Mrs. Taylor discovered a heavy salt taste to their drinking water, and feared it was contaminated with salt. Although a Rhode Island Department of Transportation (DOT) salt barn was located next door, they complained not only against DOT, but also against Mr. Hopkins, who they claimed had disturbed the migration of the groundwater flow.
In early 2004, Mr. and Mrs. Taylor began complaining to the Town of Foster about the operation of the gravel pit. By March of 2004, they were pressing the Town, in writing, to take action. As the Town reviewed the operation, Mr. Hopkins produced a soil erosion plan, and submitted it to the Town in August, 2004. Apparently it was approved after some modifications.
On Easter Sunday, April 11, 2004, Mr. Taylor went to Mr. Hopkins' home, and complained about the gravel pit operation. Mr. Taylor claimed the lease was no longer valid, and the meeting broke off in disagreement. When Mr. Hopkins went to the gravel pit shortly thereafter, he found that his chain had been broken and Mr. Taylor's trailer blocked the entrance. This was an intentional move to block Mr. Hopkins' use of his property rights. In a letter of June 26, 2004, Mr. and Mrs. Taylor indicated their refusal to allow Mr. Hopkins to use the land.
In August 2004, the gravel pit was still closed by the Taylors. Mr. Hopkins brought this instant litigation. A temporary restraining order was granted on September 1, 2004 and the gravel bank was open to Mr. Hopkins on September 2, 2004. *Page 3 
Mrs. Hopkins keeps detailed records of the operations of Mr. Hopkins' business. These records demonstrate that Mr. Hopkins extracts different amounts from the leased land in various years. Mr. Hopkins received no income from the use of the leased land during 2004 until October. During January through August of 2003, 2005 and 2006, Mr. Hopkins extracted from the property an average of 9972 total cubic yards. The net profit of the company during 2003 was $12,861, and $27,307 in 2005. The company recorded a net loss of $1241 in 2004, the year of the closure.
 Conclusions of Law
Mr. Hopkins alleges that when Mr. and Mrs. Taylor blocked the entrance to the gravel pit they not only intentionally breached the lease, they intentionally breached the covenant of quiet enjoyment. Mr. Hopkins alleges that the actions of Mr. and Mrs. Taylor amounted to "self-help." The covenant of quiet enjoyment is normally provided to the purchaser of real estate by a seller, but has also been extended to leaseholds. Frederick Realty Corp. v. General OilCo., 105 R.I. 56, 249 A.2d 418 (R.I. 1969). Even without a forceful eviction, damages may be awarded. Jefferson v.Brown, 46 R.I. 254 (R.I. 1924). Damages may also be awarded for a breach of the lease itself. Lost profits are compensatory damages which may be awarded for such breaches. Blue Ribbon Beef Co.,Inc. v. Napolitano, 696 A.2d 1225 (R.I. 1997).
Lost profits are an element of damages where, as here, a business has been improperly interrupted. Lost profits are established by showing the past history of successful, profitable business.Long v. Atlantic BPS, Inc., 681 A.2d 249 (R.I. 1996).
A party seeking punitive damages must produce "`evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality' that should be punished."Bourque v. Stop Shop Companies, Inc., 814 A.2d 320, 326
(R.I. 2003) *Page 4 
(per curiam) (quoting Mark v. Congregation Mishkon Tefiloh,745 A.2d 777, 779 (R.I. 2000)). As the act was an intentional act on the part of Mr. Taylor, punitive damages are assessed against him for $4000. It was not shown that Mrs. Taylor intentionally blocked the driveway, or that she actively participated. Her accounts were not shown to be so willful, reckless or wicked as to amount to criminality.[2]
Defendants counterclaimed that Mr. Hopkins disrupted the enjoyment of their property and intentionally diminished its value. They presented no proof of soil erosion, a decline in value or causation by Mr. Hopkins actions. Their counterclaim may also be viewed as sounding in conversion. The focus of the court's inquiry in a conversion action is "whether a defendant has appropriated to his or her own use the chattel of another without the latter's permission and without legal right." DeChristofaro v. Machala,68 A.2d 258, 262 (R.I. 1996). As Mr. Hopkins was acting pursuant to the lease agreement, Mr. and Mrs. Taylor failed to present sufficient evidence that Mr. Hopkins wrongfully interfered, or interfered without legal right. Clearly, he had permission to excavate through the long-term lease.
In their post-trial memoranda, Mr. and Mrs. Taylor also allege that the lease is void as it violates existing law. The lease has not been shown to violate any law. Mr. Hopkins submitted soil erosion plans for the property, but the lease itself appears consistent with the law.
 Calculation of Damages
The average profit for the unaffected years of 2003 and 2005 was $20,084. The Taylors denied Mr. Hopkins access for 143 days of 2004. Mr. Hopkins excavates an average of ten months per year (308 days) and therefore lost 46.43% of his profit in 2003. He is therefore awarded compensatory damages of $9325.00 (46.43% of $20,084). *Page 5 
For the reasons stated, punitive damages are awarded against Mr. Taylor only. The Court sets the amount of punitive damages at $4000.00.
The Court has reviewed plaintiff's request for attorneys' fees and reserves the right to award fees as counsel has not given an hourly breakdown or billing rate.
 Conclusion
Judgment is entered for plaintiff against defendants on all counts of the complaint and the defendants' counterclaim is denied. Compensatory damages of $9325.00 are awarded against Mr. and Mrs. Taylor, jointly and severally. Punitive damages of $4000 are awarded against Mr. Taylor. The Court reserves on the issue of attorneys' fees and will enter final judgment on these amounts in twenty (20) days if no pending motions or requests are received prior to that time.
[1] While the case was originally filed in Providence County, the Presiding Justice transferred the file to Kent County for trial, pursuant to G.L. 1956 § 8-2-27.
[2] The law "does not require proof of ability to pay as a condition precedent . . . for punitive damages." Castellucci v.Battista, 847 A.2d 243, 248 (R.I. 2004).